McLaren vs. The First National Bank of Milwaukee.

| 76 | 259 |
| 95 | 363 |

McLAREN, Receiver, Respondent, vs. THE FIRST NATIONAL
BANK OF MILWAUKEE, Appellant.

*February 26 — March 18, 1890.*

*Corporations: Officers: Misappropriation of funds: Estoppel: Re-
ceivers.*

1. The president of a corporation, who had entire control of its busi-
ness and the disposition of its funds, accepted in the name of the
corporation a draft drawn on himself personally; making it pay-
able at the bank wherein the corporate funds were deposited. The
bank paid the draft and, as was customary, charged the amount to
the corporation, and, on balancing the deposit book of the corpora-
tion, returned the draft to it with other vouchers. The transaction
was entered upon the books of the corporation, and no objection was
made until six months later, after a receiver of the corporation
had been appointed. *Held,* that the acceptance was a direction to
the bank to pay the draft out of the corporate funds, and, al-
though the draft was in fact drawn on account of the president's
individual transaction, the corporation was estopped to recover the
amount from the bank.

2. The receiver, having ratified the transaction by bringing suit and
recovering judgment against the drawer of the draft, and not
being shown to represent creditors of the corporation existing at
the time of the misappropriation of the corporate funds, has no
more right to recover, as against the bank, than the corporation
would have had.

APPEAL from the Superior Court of *Milwaukee* County.
The following statement of the case was prepared by
Mr. Justice CASSODAY:

It appears from the record that on November 14, 1887,
one H. G. Fisk, of Iron Mountain, Mich., made a draft, of
which the following is a copy, to wit: " Iron Mountain,
Mich., November 14, 1887. At ten days' sight, pay to the
order of G. A. Blesch, cash., five hundred dollars with cur-
rent rate of exchange (including charges for collection and
remittance), for value received, and charge to the account
of H. G. FISK. *To E. W. Grant, Milwaukee, Wis.;* " that

said Blesch was at the time cashier of the First National Bank of Menominee, Mich.; that said draft was thereupon discounted at said bank by said Fisk; that the said Blesch thereupon indorsed the same, and the said First National Bank of Menominee thereupon sent said draft, so indorsed, to the defendant bank for collection; that November 17, 1887, the defendant presented said draft to said E. W. Grant, who thereupon accepted the same by indorsement thereon in writing as follows: "Accepted, November 17. Payable at First National Bank, Milwaukee. GRANT CAR-RIAGE COMPANY. E. W. GRANT, President;" that upon the maturity of the acceptance, November 30, 1887, the defendant bank credited the amount of the draft to the First National Bank of Menominee, and charged up such amount to the Grant Carriage Company, which had funds on deposit therein; that December 2, 1887, the deposit book of the Grant Carriage Company was written up, balanced, and the vouchers returned to said company; that the draft in question was among the vouchers so returned; that January 6, 1888, the books of said company were made to show such charge and transaction.

It further appears that on January 28, 1888, the plaintiff was duly appointed a receiver of all the stock, effects, assets, goods, chattels, credits, things in action, franchises, privileges, and property belonging to, or in anywise appertaining to, said Grant Carriage Company, or in which it had any interest, and the said plaintiff thereupon duly qualified as such receiver; that the plaintiff thereupon brought an action against said H. G. Fisk in the courts of Michigan, and attempted to recover the amount of said draft from him, but was unable to do so by reason of his impecunious condition; that he recovered a judgment thereon against Fisk, and the same proved to be worthless; and that June 5, 1888, the plaintiff made demand upon the defendant bank for the payment of said draft, and the same was refused.

February 27, 1889, the plaintiff commenced this action against the defendant bank. Issue was joined therein, and the above facts, in effect, admitted either by the pleadings or orally, or proved. Upon the trial of this action the plaintiff tendered to the defendant an assignment of the judgment against Fisk. At the close of all the testimony the court directed a verdict in favor of the plaintiff and against the defendant for the amount of said draft. From the judgment entered thereon the defendant appeals.

For the appellant there was a brief by *Finches, Lynde & Miller*, and oral argument by *B. K. Miller, Jr.*

*Gerry W. Hazelton*, for the respondent, contended, *inter alia*, that inasmuch as the draft was drawn on E. W. Grant personally the acceptance was wholly irregular and unauthorized and the bank had no right to pay it out of the funds of the company. Daniels on Neg. Inst. secs. 412–485; Randolph on Comm. Paper, secs. 898, 171; *Heenan v. Nash*, 8 Minn. 407; *Rice v. Ragland*, 10 Humph. 545; *School Dist. v. Collins*, 16 Kan. 406; *Mare v. Charles*, 5 Ellis & B. 978. The bank was required to take notice of the fact that the acceptance of the draft in this case was unlawful and in violation of the trust of the president. *Claflin v. Farmers' & C. Bank*, 25 N. Y. 293; *Alexander v. Cauldwell*, 83 id. 480; *West St. Louis S. Bank v. Shawnee Co. Bank*, 95 U. S. 557; *Anderson v. Kissam*, 35 Fed. Rep. 699. Nor could knowledge of the transaction on the part of the bookkeeper be imputed to the officers or directors of the company. *Hurley v. Watson*, 68 Mich. 531; *Merchants' Bank v. Detroit K. & C. Works*, id. 620; *McLellan v. Detroit File Works*, 56 Mich. 582. Besides, ratification cannot be by the same parties who assume power to make the contract. *Tracy v. Guthrie Co. Agr. Society*, 47 Iowa, 27.

CASSODAY, J. The Grant Carriage Company was a corporation organized under the laws of Wisconsin, having its

office in Milwaukee and doing business there up to January 28, 1888, and for a long time prior thereto. During that time the company had kept its accounts with the defendant bank, and it was customary for the defendant to charge up the amount of acceptances made by the company on drafts drawn upon it to its account, where no check was given in payment. E. W. Grant owned one half of the stock of the company, and was a director, president, and general manager of the company, and the only party with whom the bank transacted its business with the company. In fact he was the only officer of the company in Milwaukee; all the others being nonresidents of the state. Grant kept no individual account with the bank. It is conceded that the draft in question was drawn on account of an individual transaction between Grant and Fisk, and did not concern the business of the carriage company. This being so, it is manifest that the carriage company was not bound by the acceptance, in its name, by its president, E. W. Grant, and might have successfully escaped liability, by reason of the facts stated. Still, we apprehend, as E. W. Grant so accepted without authority, he thereby became individually bound by such acceptance. But the carriage company was not sued upon such acceptance, and made no attempt to escape such liability. The acceptance being by its president,— the only officer in control of its business affairs in Wisconsin,— was, in effect, a direction to the defendant bank to pay the draft out of funds in its possession belonging to the carriage company. Especially it should have that effect after the draft had thus been paid and charged up to the carriage company, and returned to it as a voucher for such payment, without any objection ever having been made by the carriage company, or any of its officers, or any one, until the demand made by the plaintiff, June 5, 1888. Besides, it does not appear that the defendant bank was aware of the fact that the draft was drawn

on account of an individual transaction between Grant and Fisk, otherwise than might be inferred from the draft itself, at the several times of making such payment and charging up the amount of the draft to the carriage company and crediting the same to the Menominee Bank. The mere inference to be drawn by the defendant from the mere fact that E. W. Grant was personally named as drawee therein may have been overcome by such direction, by the president and sole manager of the carriage company to the defendant, to pay the draft out of moneys in its hands belonging to the carriage company.

The facts stated suggest two questions for consideration:

*First.* Might the carriage company have recovered from the defendant the amount of its funds so used in payment of the draft? The corporators of the carriage company had intrusted E. W. Grant with the keeping and care of the entire funds and property of the corporation, and had ostensibly clothed him with plenary power in the management of its business and the disposition of its funds. The defendant had no guardianship over E. W. Grant, nor supervision over the business of the carriage company, nor the care of its funds, except in so far as it was intrusted with the same by Mr. Grant himself or those under his control and management. Such being the relations of E. W. Grant to the carriage company, and its money on deposit in the bank having been used in payment of the draft by such direction of himself and such approval by the carriage company, no good reason is perceived why the carriage company should be allowed to recover the amount of such payment from the bank, notwithstanding such direction and approval. As indicated, there is no evidence that the bank knew, much less connived at, the misappropriation. On the contrary, for aught that appears in the record, it might fairly have been inferred from such direction and approval that the draft was on account of the business of the carriage company. If the car-

riage company, by such conduct of its president and sole manager, led the bank to believe that the draft was on account of such business, then it certainly would have been estopped from asserting the contrary. *Morgan v. Railroad Co.* 96 U. S. 716. " The doctrine of estoppel *in pais* always presupposes error on one side, and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage." *Ibid.*

*Secondly.* The next question requiring consideration is whether the plaintiff, as receiver of the carriage company, stands in a more favorable position to recover against the bank than the carriage company itself. The plaintiff, as receiver, brought an action and recovered judgment against Fisk on account of the draft; thereby treating it as the property of the carriage company, and ratifying the transaction so far as he was able. This action was not commenced until more than a year after the appointment of the plaintiff as such receiver, and some fifteen months after such misappropriation. But the more serious difficulty confronting the plaintiff is the fact that it nowhere appears in the record that at the time of such misappropriation, or of such ratification, or of the appointment of such receiver, the carriage company was insolvent or indebted to any one. The result is that we must regard the plaintiff as standing in the shoes of the carriage company, and as having no more right to recover, as against the bank, than the carriage company would have had. Even had it appeared in the record that at the time of the appointment of the receiver the carriage company was insolvent, with creditors who became such subsequently to such misappropriation, still it would have been very doubtful about the plaintiff's right to recover as against the bank. *Farwell v. Metcalf*, 63 N. H. 276; *Haben v. Harshaw*, 49 Wis. 379. If the plaintiff should make it appear that he in fact repre-

sents creditors of the carriage company existing at the time of the misappropriation, then it may be that he can make a case entitling him to recover as such receiver. But as to that we express no opinion. The following cases may have some bearing upon that subject: *Viles v. Bangs,* 36 Wis. 131; *Cotzhausen v. Judd,* 43 Wis. 213, 28 Am. Rep. 539; *Hurt v. Clarke,* 28 Am. Rep. 751; *Huiskamp v. Moline Wagon Co.* 121 U. S. 310; *Schmidlapp v. Currie,* 30 Am. Rep. 530, and note.

*By the Court.*— The judgment of the superior court is reversed, and the cause is remanded for a new trial.

