# H. L. Cooper and D. Ridgway Burr *v.* Benjamin Potts, Appellant, and Rose Valley Mills.

*Assignment—Equitable assignment—Parol evidence to vary writing—Consideration.*

R., an insolvent corporation largely indebted to C. & Co., executed, by its treasurer P., before its general assignment for creditors, the following paper: "R. hereby assign to C. & Co. all money due or to become due by M. & Co. for goods consigned by R. to M. & Co., or from any other source." It did not appear that P. had had any authority to execute the paper, but the corporation, subsequently, by various acts, showed that it had knowledge of the paper, and never repudiated it. The fund raised by the sale of the goods was claimed by C. & Co., and also by the receiver of the corporation. Two witnesses testified that the writing was executed to prevent the goods from being attached prior to the general assignment. Three witnesses testified that the assignment was made for the purpose of preferring C. & Co. *Held,* (1) that the auditor committed no error in admitting parol evidence to show the consideration for the execution of the paper; (2) that the paper was a valid equitable assignment; (3) that the finding of the auditor, confirmed by the court below, that the parol evidence was insufficient to vary the terms of the writing would not be reversed by the Supreme Court; (4) that the knowledge by the corporation of the acts of its secretary and its failure to repudiate them were sufficient to warrant the auditor in considering the assignment ratified.

Argued Feb. 10, 1898. Appeal, No. 485, Jan. T., 1897, by Benjamin C. Potts, from order of C. P. Delaware Co., Sept. T., 1893, No. 11, dismissing exceptions to auditor's report. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report, distributing money in the hands of the receiver of Rose Valley Mills. .

The facts will be found in the report of the auditor, W. Roger Fronefield, Esq., which is as follows:

Before the assignment of Rose Valley Mills for the benefit of creditors, it owed Edward H. Coates & Company about $38,037.17, with some interest, which was partly made up of accounts which Coates & Potts had against Rose Valley Mills and which were, on June 9, 1890, assigned to Edward H. Coates & Co. for a debt which Coates & Potts owed them. On February 29, 1892, while this money was owing, Mr. Benjamin C. Potts, treasurer of Rose Valley Mills, met William M. Coates and Edward H. Coates at the office of William M. Coates, in Philadelphia, and, while there is a dispute as to just what was said, still, in consequence of it, the parties went to the office of Richard C. Dale, Esq., and had a paper drawn by him, of which the following is a copy:

"MEDIA, PA., February 29, 1892.

"The Rose Valley Mills hereby assign to Edward H. Coates & Company all money due or to become due by O. J. Martin & Company for goods consigned by Rose Valley Mills to O. J. Martin & Company, or from any other source.

"ROSE VALLEY MILLS.
"BENJAMIN C. POTTS, Treasurer."

Notice of this assignment was given to O. J. Martin & Co. on February 29, 1892, by the treasurer of Rose Valley Mills, and receipt of the notice was acknowledged on March 1, 1892, by O. J. Martin & Co. to the treasurer of Rose Valley Mills.

Almost immediately after the assignment of Rose Valley Mills for the benefit of creditors, on March 7, 1892, a dispute arose as to the ownership of the money in the hands of O. J. Martin & Co. The assignee claimed and included it in an inventory of the assets, and Edward H. Coates & Co. claimed it under the assign-

ment, and insisted that it was improperly included in the inventory. This dispute was carried on until an agreement was entered into, dated May 9, 1892, wherein it was agreed by Edward H. Coates & Co. and Horace P. Green, assignee of Rose Valley Mills, that the goods be sold, if not then sold, and that the fund be paid to the United Security, Life Insurance & Trust Co. of Philadelphia, and that suit be brought against the said company by the assignee to recover said money, and that a legal determination of the suit shall be binding and conclusive as to the fund. The Trust Co. accepted the position as stakeholder, and by agreement are to receive three percentum of the proceeds for their trouble, as well as reimbursements for all outlays. The goods were sold for $3,014.73. The Trust Co. retain $90.42 for their trouble, and retain $2,924.31, awaiting the action of the court.

When Edward H. Coates & Co. in September, 1892, signed the composition paper, they stated in a letter to Benjamin C. Potts, treasurer, that it was signed with the distinct understanding that O. J. Martin & Co. account was not included in the settlement, and that it must be first credited on account as a payment, to which the treasurer replied that he could not agree to such a disposition of the account, and that the assignment of the account was not in payment of the claim, but for a very different purpose, and that unless the condition under which the signature was given was withdrawn, he must regard the composition as not signed by Edward H. Coates & Co. This misunderstanding was finally settled by an agreement that the composition paper was given and accepted without prejudice to either party in determining the ownership of the property or money in the hands of O. J. Martin & Co. as agreed to before.

All the parties in interest appeared before your auditor and agreed that the question to be determined in Philadelphia by an issue, as to the rights of the several parties to the fund now in possession of the said United Security, Life Insurance and Trust Co. of Pennsylvania, received from O. J. Martin & Co. shall be passed upon and determined by your auditor in this proceeding with the same effect as if no issue had been agreed upon in Philadelphia. The question to be disposed of is : To whom does the fund in the hands of the United Security, Life Insurance and Trust Co. belong ? Edward H. Coates & Co.

claim it and offered the assignment of it by Benjamin C. Potts, treasurer, to them, and proved that Benjamin C. Potts has been a lawyer for ten years, was the treasurer of Rose Valley Mills, also the chief executive officer, had the general supervision of all business, signed notes, drafts and checks, paid bills, bought goods, sold their product, arranged with commission houses to sell on consignment, negotiated and settled with creditors, and was the general manager and overseer of all the business of the Rose Valley Mills, and exercised, with the knowledge and without the disapproval of the company, all these and other powers necessary to carry on the business ; that the by-laws gave him custody of the funds, the power to manage and conduct the operations of the mill and the business generally in accordance with the directions of the board.

To prove that the assignment was not intended to transfer the money to Edward H. Coates & Co., absolutely, but only to protect the goods from attachment, counsel for other creditors called Benjamin C. Potts who admitted signing the paper but said, under objection, that he met Edward H. Coates, William M. Coates and Joseph H. Coates, in Philadelphia, and stated to them on February 29, 1892, that relief must be had for Rose Valley Mills, or it would have to make an assignment or ask for a receiver. That William M. Coates asked of him whether there were any foreign creditors who would be likely to attach any goods or accounts in commission house, and being informed that there was a claim in New York and one in Boston which might annoy, suggested that the goods and accounts in the commission house be transferred temporarily to prevent attachments until an assignment could be made or a receiver appointed. That a paper was drawn and signed by Mr. Potts, as treasurer, assigning the money in the hands of O. J. Martin & Co., to Edward H. Coates & Co. The validity of this paper was then questioned and the parties, to settle that question, went to the office of Richard C. Dale, Esq., for the purpose of getting him to draw up such a paper which would stand ; that Mr. Potts stated to the Messrs. Coates that it would be impossible for him to prefer Edward H. Coates & Co., inasmuch as he had told the creditors that there would be no preference ; that the advisability of making an assignment or having a receiver appointed was discussed in Mr. Dale's hearing ; that the assignment of

the claim against O. J. Martin & Co. to Edward H. Coates &
Co. was drawn up by Mr. Dale, read aloud and, just before the
treasurer signed it, Mr. Edward H. Coates said to Mr. Dale
that it is not intended as a preference but to prevent creditors
from attaching goods in New York until such time as an assign-
ment could be made or a receiver appointed ; that it was then
suggested by Mr. William M. Coates that the assignment should
be a preference for at least so much as would cover the interest
to the date that interest is paid to other creditors, whereupon
Mr. Edward H. Coates stated that he had told Mr. Dale what
the understanding was ; that the treasurer would not have
signed the paper if it had been intended as a preference ; that
a short time after this he saw Mr. William M. Coates and ascer-
tained that the paper was claimed as a preference, and that he
then told him that it was intended for no such thing, but to
prevent attachments ; that Edward H. Coates gave him an
order on O. J. Martin & Co. for all over $2,500 in their hands,
which Martin & Co. declined to accept because they were unable
to tell the value of the goods they had on hand which had not
been converted into money.

Horace P. Green was also called and testified that he, as
assignee, included the account due by O. J. Martin & Co. in
the inventory, subject to the claim of Edward H. Coates & Co.;
that he showed the inventory to Edward H. Coates & Co. and
told them that he had understood from Mr. Potts that the
assignment was given to prevent attachments of property in
New York and for the purpose of protecting all the creditors,
so that none might be preferred ; that Mr. Coates replied that
primarily that was so, but that there was considerable interest
due to Edward H. Coates & Co., and that this assignment should
be given as a preference to the amount of the interest and that
then they would be on an equality with the other creditors.

To further sustain the assignment, counsel for Edward H.
Coates & Co., called Mr. William M. Coates who said that on
February 29, 1892, Mr. Benjamin C. Potts and Mr. Edward H.
Coates were at his office, and that Mr. Potts said that the Rose
Valley Mills would have to stop unless he could get assistance,
and that he feared some $6,000 in New York would be attached ;
that he wanted us to help him and that if we would not, he
hoped to get outside assistance.    It was then suggested to Mr.

Potts that the claim of Edward H. Coates & Co. should be preferred in full and that these goods be assigned to them as part payment; that Mr. Potts did not say that the assignment was not intended as a preference; that they accordingly went to the office of Richard C. Dale, Esq., and told him that they wanted to assign the money in the hands of O. J. Martin & Co., as a preference, and he, in consequence, drew up the assignment; that Mr. Edward H. Coates said to Mr. Dale that one purpose of the assignment was to prevent attachments by other creditors on which Mr. William M. Coates said that the understanding was to be a straight preference, and to this Mr. Potts assented.

Mr. Edward H. Coates says that on February 29, 1892, Mr. Potts came to the office of William M. Coates and stated that the Rose Valley Mills were financially embarrassed, unless relief came an assignment for creditors would have to be made or a receiver be appointed; that it was asked of Mr. Potts if there were any goods which might be attached by foreign creditors, and being informed that there was money in New York subject to attachment, Mr. William M. Coates suggested that, as the claim of Edward H. Coates & Co. was such as should be preferred, this money in New York, in the hands of O. J. Martin & Co., be assigned to Edward H. Coates & Co., as a preference; that Mr. Potts consented to assign the money in accordance with the suggestion of Mr. William M. Coates, and signed the transfer in Mr. Dale's office; that Mr. Green did not state to him that the assignment was not to give a preference, and he did not reply to Mr. Green that primarily that was so; that he did not say to Mr. Dale that one of the first objects to be accomplished by the assignment of the O. J. Martin & Co. claim was to prevent any attachments, but, that Mr. William M. Coates said that it was made upon no such conditions, and that Mr. Potts assented to this; that shortly after the claim was assigned, Mr. Potts stated that after he had given the assignment, he had shipped to O. J. Martin & Co. goods from which he expected to obtain advances sufficient to pay wages coming due on the following Saturday, and asked the assignee of the claim to give him an order for an amount sufficient to pay the wages; that there was nothing said about the shipment of other goods when the assignment was made, and that an order was given for $1,700, provided the amount in the hands of O. J. Martin & Co.

was not reduced below $2,500, and provided the order would not invalidate the assignment of the fund; that William M. Coates was consulted about this, because George M. Coates, whom William M. Coates represented, had guaranteed part of the claim against Rose Valley Mills.

Richard C. Dale, Esq., testified that William M. Coates, Edward H. Coates and Benjamin C. Potts called at his office and explained that Rose Valley Mills were in financial difficulty; owed Edward H. Coates & Co., and wanted to secure a portion of the claim by assignment of some money in the hands of a New York commission house; that they wanted the assignment drawn immediately for fear creditors might get ahead of them by foreign attachment; that with this understanding the assignment was drawn; that Mr. Edward H. Coates did not say that the assignment was not intended as a preference nor that it was only to prevent attachments of the money by foreign creditors, but that the parties expressed, in the hearing of all three, their desire to have a paper drawn which would give the claim of Edward H. Coates & Co. a preference as far as possible.

Considerable correspondence is also offered, amongst which is a letter of March 8, 1892, concerning the order of O. J. Martin & Co., for the purpose of obtaining money to pay wages of the hands of the Rose Valley Mills, in which it is stated by Edward H. Coates & Co., that further necessities can be provided hereafter from the shipment of goods going forward.

Mr. Edward H. Coates in a letter of March 25, 1892, to the assignee, claims that the O. J. Martin & Co. account is improperly included in the inventory, and the assignee by letter of the same date states that he does not see how the claim could have been left out or included in any other way than that in which it appears.

On September 16, 1892, Mr. Edward H. Coates wrote the Rose Valley Mills that the signature to the composition paper was given with the understanding that the O. J. Martin & Co. account be first credited on his account as a payment, and that the account was not included in the settlement. To this the treasurer replied under date of September 22, 1892, that the O. J. Martin & Co. account was not assigned in payment of the claim but for a very different purpose, and unless the condition

in letter of 16th is withdrawn, the agreement to compromise will have to be treated as not signed.  This dispute was finally settled by a letter of Benjamin C. Potts, treasurer, to Edward H. Coates & Co., in which it is stated that it was understood that the composition agreement is to be regarded as without prejudice to the rights of either party in the O. J. Martin & Co. account.

The testimony given orally seems to practically agree with the letters offered, so your auditor is unable to reconcile the statements of the different parties.

An attempt is being made to reform the assignment by parol evidence to establish a contemporaneous oral agreement which induced the execution of the assignment, though it may vary the instrument, or to show a contemporaneous promise to use the instrument for a particular purpose, which has been violated.

It has been decided many times that in order to contradict or vary a written instrument by parol testimony, there must be proof of fraud, accident or mistake in the creation of the instrument itself, or an attempt to make a fraudulent use of it in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed, and the evidence must be clear, precise and indubitable and it must be established by the testimony of two witnesses or of one witness corroborated by circumstances equivalent to another: Phillips v. Meily, 106 Pa. 536; Sylvius v. Kosek, 117 Pa. 67.

The instrument in this case is asked to be reformed on the positive testimony of Mr. Potts, and on the testimony of Mr. Green, which is made up of a talk with Mr. Coates.  It is clear that without the testimony of Mr. Green, the contention of the creditors must fail.  Does his testimony vary or contradict the instrument or show a fraudulent use of it, which was not contemplated at the time it was signed?  It is not disputed that Mr. Pott's primary object in having the goods assigned was to prevent their being attached, as that was the reason which prompted the assignment, so that statement can be reconciled with the assignment, and even though Mr. Green did say to Mr. Coates that its object was for the purpose of protecting all the creditors so that none might be preferred, and that Mr. Coates told Mr. Green that was primarily so, but that there

was considerable interest due on the claim and that this assignment should give them a preference to at least the extent of the interest, still this does not show that it was not afterwards given as a preference on account of the claim or of interest, neither does it show that Mr. Coates said it was not intended as a preference. It does show that Mr. Coates contended then that it should be preferred to an amount equal to the interest, and that it was not given for the exclusive purpose of preventing attachments. It is far from clear that this evidence supports the testimony of Mr. Potts. We are of the opinion that the evidence offered is insufficient and not clear enough to vary the terms of the assignment. Should the court be of the opinion however that the evidence against the instrument, standing alone, is enough to vary it, we are still confronted with the testimony of Edward H. Coates, William M. Coates and Richard C. Dale, Esq. While they state that the assignment was prompted by a fear of foreign attachments, still they all insist that it was an absolute assignment, intended as a preference to Edward H. Coates & Co., owing to the character of their claim against Rose Valley Mills, and that Mr. Potts did not state that it was not intended as a preference. The instrument was read aloud to the treasurer before he signed it; he was fully aware of its terms and, as a lawyer, knew its importance, and that it could not be easily varied if it did not contain all the transaction. Those who assert that the paper is not what it purports to be, and does not contain the entire transaction, must take the laboring oar and prove it by evidence clear, precise and indubitable: Thomas & Sons v. Loose, 114 Pa. 35.

It is contended by Mr. Johnson that an agreement to give an order on O. J. Martin & Co. to pay wages is persuasive evidence that the assignment was not given to prefer Edward H. Coates & Co., else he would not have relinquished that much of the fund, but this position is explained to the satisfaction of your auditor by the fact that other goods had been shipped by Rose Valley Mills to O. J. Martin & Co. after the assignment, which was not in contemplation at the time the assignment was made, and for that reason Edward H. Coates & Co. relinquished some of the fund upon the expressed condition that the remainder of the fund be not reduced below $2,500.

Your auditor is of the opinion and finds from the weight of

the evidence that the paper assigning the goods in the hands of O. J. Martin & Co. to Edward H. Coates & Co. was signed with the intention of creating a preference for the amount realized from the sale of those goods.

It is contended however that even though it was so intended, the treasurer had no authority to make such an assignment. The by-laws of the corporation gave the treasurer custody of the funds of the corporation, gave him power to manage and conduct the operations of the mill and the business generally in accordance with the direction of the board. In pursuance of this very general power the treasurer, who was also chief executive officer and general manager, had, with the knowledge of the company, general supervision of all business, paid all bills, bought and sold goods, arranged with commission houses to sell on consignment, signed notes, drafts and checks, employed and discharged the hands and workmen, and exercised, without disapproval of the directors, all powers necessary to carry on the business. The directors seemed to meet every three months, but the minutes disclose the transaction of very little, if any, business, and do not show any action of the directors in conducting any particular business, or that the acts of the treasurer were approved or disapproved. If the proceeds of the sale of the goods in the hands of O. J. Martin & Co. had been in the bank account of Rose Valley Mills there can be no question that the treasurer had authority to draw a check for the amount to Edward H. Coates & Co. for a payment on account of their claim, and as the money was in the hands of O. J. Martin & Co., your auditor is unable to see why he did not have the authority to do practically the same thing in giving an assignment of the claim for the same purpose, and the fact that the assignment of this claim was made on the eve of the insolvency of the corporation, makes no difference : Williams v. Rolling Mills Co., 174 Pa. 299.

Your auditor is, therefore, of the opinion that the treasurer did not exceed his authority under the by-laws, and that the assignment is valid, and recommends that the amount of money in the hands of the United Security, Life Insurance and Trust Company, less their commissions, be awarded to Edward H. Coates & Co., on account of their claim.

The report of your auditor was referred back to him for the

purpose of taking more testimony on the claim for the goods in the hands of O. J. Martin & Co. By this testimony, it appears that O. J. Martin & Co. would not pay the amount of money or give the warehouse receipt for the goods to E. H. Coates & Co., because the assignee of Rose Valley Mills, for the benefit of its creditors, claimed them, and would not give them to the assignee because E. H. Coates & Co. claimed them and, to get the matter adjusted, an agreement was entered into between the assignee and E. H. Coates & Co., on May 9, 1892, wherein it was agreed that the goods be sold, if not then sold, and that their proceeds be paid to the United Security, etc., Co., and that a suit for the proceeds be brought to determine who had the right to the money. It was afterward agreed by the parties that the dispute be referred to your auditor. After the agreement was entered into, Mr. Potts went to see O. J. Martin & Co., and obtained from them a draft, which represented the goods sold, indorsed to the order of the United Security, etc., Co., and the warehouse receipt which was indorsed to him as treasurer, and which represented the goods which had not been sold. The draft and warehouse receipt were turned over to the United Security Co., in pursuance of the agreement, and they had never been in the hands of E. H. Coates & Co. The draft and warehouse receipt were transferred by O. J. Martin & Co., for the purpose of getting them into the hands of the stakeholders. Upon this state of facts, it is urged :

1. That the assignment of E. H. Coates & Co. did not pass the goods unsold in the hands of O. J. Martin & Co. I think it cannot be doubted but that it was the intention of all parties in interest to transfer everything in the hands of O. J. Martin & Co., belonging to Rose Valley Mills. "All money now due and to become due for goods consigned," is the language of the assignment. The goods were placed in the hands of O. J. Martin & Co. for sale, and the proceeds of those sold at the time of the assignment of E. H. Coates & Co. undoubtedly passed to them, and those unsold had been in the hands of Martin & Co. for some time, and were put there for sale, and the clause in the assignment, " All money to become due," certainly contemplated a transfer of that realized by a sale of those not then sold, and would certainly put the goods themselves out of all reach and control of the Rose Valley Mills. Your auditor

is of the opinion that it would be drawing too fine a distinction to hold that the goods in the hands of Martin & Co. for sale, did not pass by the assignment.

2. That E. H. Coates & Co. cannot claim them as against the assignee, because they did not have them in possession. Your auditor does not understand the law to be that an assignee of goods must take actual possession of them when they are not left in the hands of the assignor. The general rule is that possession must be given to the vendee when the property sold is in vendor's possession and, in determining the kind of possession necessary in the vendee, regard must be had to the character of the property, the location of it, the nature of the transaction, the position of the parties and the intended use of the property. In this case, when the property was assigned, it was out of the actual possession of the assignor, and the assignee of it had quite as much possession after the assignment as the assignor had before. It had been placed in the hands of a commission merchant for sale, and was at the time of the assignment in his hands for that purpose, subject to his charges, and of course E. H. Coates & Co. would only take possession of the goods and money subject to the charges of the commission house, and only wanted the proceeds of the sale of the goods, after being converted into cash. Your auditor is therefore of the opinion that the assignment to E. H. Coates & Co. passed the money, together with the goods in the hands of Martin & Co. for sale, and that the possession of E. H. Coates & Co. was sufficient under the circumstances, and sees no reason to change his report.

Exceptions to the auditor's report were dismissed by CLAYTON, P. J., who filed the following opinion :

Both sides seem dissatisfied with the auditor's report. Mr. Potts, the principal creditor, excepts to the auditor's construction of the paper executed by him for the company, purporting to assign to E. H. Coates & Co. the commission account of the company in the hands of O. J. Martin & Co. of New York, dated February 29, 1892. Coates & Co. except to the allowance made by the auditor to Mr. Potts for his salary. Both parties object to certain fees and expenses being charged to the fund instead of to the share of the funds awarded to the litigants.

The testimony is quite voluminous and the argument was most exhaustive. The points in dispute may be reduced to five: 1. What is the proper construction of the paper of February 29, 1892, unaffected by the parol testimony? 2. Is the parol testimony sufficient to either explain or vary the writing? 3. If the paper is to be construed as an assignment of the money and goods in the hands of O. J. Martin to E. H. Coates & Co., had Mr. Potts authority to make such a contract, to be binding upon both the company and its creditors? 4. Has the auditor allowed Mr. Potts too much for his services as general manager of the concern? 5. Has the auditor properly distributed the fees and expenses in charging them to the fund instead of charging the dividends awarded to the several litigants?

The paper, standing alone, would undoubtedly be an equitable assignment if it was for a good and sufficient consideration and was authorized by the company. On its face, it states no consideration. This, however, can always be proved by parol. The uncontradicted evidence on both sides is that the Rose Valley Mills owed E. H. Coates & Co. an honest business debt more in amount than the highest value of the goods and money assigned. It was also competent to hear parol testimony as to any latent ambiguity in the paper. It speaks of "money due and to become due," etc. The uncontradicted parol testimony is that it was intended to cover all the property in the hands of O. J. Martin & Co. that could be attached, and that the subject of the alleged assignment was the goods and money of the Rose Valley Mills in the hands of their commission merchant, O. J. Martin & Co., of New York. This far, therefore, the auditor has heard proper testimony to enable him to construe the paper. If the evidence of a contemporaneous parol agreement giving to the paper a meaning different from its apparent meaning has not been sufficient in law to have that effect, then the construction put upon this paper by the auditor is correct, and the chief exception must be dismissed. This brings us to the second question. Is the parol testimony sufficient, of a contemporaneous parol agreement that this paper should only be used for the benefit of all the creditors and that its object was to assign the money and goods to Edward H. Coates & Co., as a trustee for all the creditors so as to place the property beyond attaching foreign creditors. The auditor has found

against this proposition, and we are not convinced that this is erroneous. He had the witnesses before him, and was able to weigh the testimony better than the court can by a mere reading of it. This brings us to the third question. Had Mr. Potts authority to make such a contract? It may be conceded that he had not such authority either as secretary or general manager. And unless there is sufficient evidence of a ratification of his contract by the company, we are of the opinion that this point was well taken. We find, however, that the company, from the time the paper was signed, knew of its existence, and have not from then till now repudiated it. The assignment that was made by the company a few days after the date of the paper virtually recognizes it; as the assignee in his inventory of the assets names the commission account of O. J. Martin & Co., and notes it as subject to the claim of Edward H. Coates & Co. " Potts was the active business executive of the company under its by-laws." I quote from Mr. Johnson's paper-book. There was a meeting of the directors after the date of the paper, and after an alleged compromise with all the creditors, including Coates and Co., and after the Rose Valley Mills Co. had full knowledge of the existence of the paper. In addition to this, the company and assignee claimed under the assignment. The tripartite agreement to select a stakeholder until the effect of the paper should be construed, was a clear ratification of Pott's power to make it. Not only was no action taken to repudiate it, but on the contrary it was regarded by the company as a valid transfer of the claim in New York, at least so far as to protect the property from attaching creditors. True, Mr. Potts · says the company supposed his construction of the paper was all the effect it was to have, but a mistake in law will not relieve them. We are, therefore, of opinion that the learned auditor has given the proper construction to the paper, and that its legal effect was to vest in E. H. Coates & Co. the title to said goods and money, not only as to the company but as against its creditors. By the uncontradicted testimony the intention of the parties was that this paper was to have the effect of defeating any foreign attachment, which it could not have unless it was a full and absolute assignment, bona fide, made before the levying of the attachment. The fourth question is: Has the auditor allowed Mr. Potts more than he was entitled to under

his agreement and the resolution of the company, as measured by the services he rendered? It must be remembered that Mr. Potts was the factotum of the concern; that the company had agreed to the compensation claim; that the company, although it had reorganized and held a meeting afterwards, did not change it. It must also be remembered that the success of business was doubtful, and the result has shown that all he could receive was his dividend. Under all the circumstances we do not feel like disturbing the finding of the auditor on this point. His findings upon the fifth and last point are entirely satisfactory, and in our judgment correct.

The exceptions are therefore dismissed and the report of the auditor is confirmed.

*Errors assigned* were in dismissing exception to auditor's report.

*Isaac Johnson,* for appellant.—Potts had no authority to sign the paper in controversy: Walworth County Bank v. Loan & Trust Co., 14 Wis. 325; United States v. City Bank of Columbus, 21 Howard, 356; Morawetz on Corporations, sec. 540; State v. Davis, 50 Howard's Pr. 447; Sandy River Bank v. Merchants' Bank, 1 Biss. 146; Chemical Nat. Bank v. Kohner, 8 Daly, 530: Millward-Cliff Cracker Co.'s Est., 161 Pa. 164; Torrey v. Monument Assn., 5 Allen, 327.

It is the law in Pennsylvania that the officer or agent of a corporation can only act within the scope of his employment and subject to the direction of the board. Not even the board should have power to transfer assets to one creditor for an antecedent debt, on the eve of insolvency, and in contemplation of it, the creditor being fully informed. Certainly no officer or agent may do this without authority from the board. Such a transaction could scarcely avoid suspicion of mala fides.

*V. Gilpin Robinson,* and *William C. Hannis,* for appellees.— This Court will not reverse the report of an auditor, confirmed by the court below, except clear and manifest error be pointed out, and this even where the testimony is conflicting and the merits may appear contrary to the auditor's conclusions: Stocker v. Hutter, 134 Pa. 19; Brotherton v. Reynolds, 164 Pa. 134; White v. Wright, 179 Pa. 75.

Where there is no ambiguity in an instrument of writing, parol evidence of the intention of the parties is inadmissible: Litle v. Henderson, 2 Yeates, 395; Heagy v. Umberger, 10 S. & R. 339; Shepherd v. Watson, 1 Watts, 35; Patterson v. Forry, 2 Pa. 456; Stub v. Stub, 3 Pa. 351; Hancock's Appeal, 34 Pa. 155; Kennedy v. Erie, etc., Co., 25 Pa. 224; Druckenmiller v. Young, 27 Pa. 97; Com. v. Deck, 28 Pa. 497; Albert v. Ziegler, 29 Pa. 50; Fisher v. Deibert, 54 Pa. 460; Kirk v. Hartman, 63 Pa. 97.

And when parol evidence is received, it must be under such circumstances as would justify a chancellor in reforming the writing on the ground of fraud, accident or mistake, and the evidence must be clear, precise and indubitable: Murray v. R. R. Co., 103 Pa. 37; Phillips v. Meily, 106 Pa. 536; Sylvius v. Kosek, 117 Pa. 67; Ott v. Oyer, 106 Pa. 7.

A contemporaneous oral agreement, to vary a written contract, can only be shown by the testimony of two witnesses, or by one witness corroborated by circumstances equivalent to another: Thomas v. Loose, 114 Pa. 35; Jackson v. Payne, 114 Pa. 67; Jones v. Backus, 114 Pa. 120; English's Appeal, 119 Pa. 533; Thudium v. Yost, 20 W. N. C. 217; Yeisley v. Bundel, 22 W. N. C. 462; North v. Williams, 120 Pa. 109; Day v. Osborn, 19 W. N. C. 443.

The rights of the receiver of the Rose Valley Mills rise no higher than those of that corporation: Morris's App., 88 Pa. 368; Kent's App., 87 Pa. 167; Ritter v. Brendlinger, 58 Pa. 68.

Per Curiam, March 21, 1898:

We think the findings of fact contained in the auditor's report are fully sustained by the testimony, and upon those findings, and for the reasons stated in the report of the auditor and in the opinion of the learned court below we affirm the decree.

Decree affirmed and appeal dismissed at the cost of the appellant.