# CHARLESTON

THOMPSON v. LABORINGMAN'S MERCANTILE & MANUFACTURING COMPANY.

Submitted January 23, 1906.     Decided January 30, 1906.

1. PRINCIPAL AND AGENT—*Authority of Agent—Notice.*

On the trial of an issue as to whether an act done by an agent was within the scope of his actual, or, within the meaning of the law, apparent, authority, notice to the agent of facts, relating to, or growing out of, the act in question, is not notice to the principal. If the act is beyond the agent's authority, the relation of principal and agent does not exist as to it, and the rules applicable to such relationship do not apply. (p. 46.)

2. SAME—*Loan to Agent—Evidence.*

Proof of a loan made to an agent on behalf of his principal is not evidence of the reception of the money by the principal. if the

agent had no authority to borrow money on behalf of his principal. Nor is the agent's admission or representation as to the purpose for which he borrowed the money evidence against his principal. (p. 48.)

3.  SAME—*Ratification*.

Failure on the part of a principal to dissent from or repudiate an unauthorized act of his agent, within a reasonable time, dependent upon the nature of the transaction and the situation and surroundings of the parties concerned, is evidence of ratification of the unauthorized act.  (p. 49.)

4.  SAME—*Knowledge of Principal*.

Lack of knowledge on the part of a principal, of any of the material facts connected with an unauthorized act of his agent, done on his behalf, will prevent the silence of the principal, or his failure to repudiate the act, from amounting to a ratification thereof.  (p. 51.)

5.  SAME—*Evidence of Authority*.

Mere rumor or common belief, that an agent has power to do a particular act on behalf of his principal, is not, of itself, evidence of such authority.  (p. 53.)

Error to Circuit Court, Tucker County.

Action by A. Thompson againt P. H. Murphy and others. Judgment for plaintiff, and defendant the Laboringman's Mercantile & Manufacturing Company, brings error.

*Reversed and Judgment for Defendant.*

C. O. STRIEBY, for plaintiff in error.

CUNNINGHAM & STALLINGS, for defendant in error.

POFFENBARGER, JUDGE:

The Laboringman's Mercantile and Manufacturing Company seeks the reversal of a judgment against it in favor of A. Thompson, for the sum of $407.44, rendered by the circuit court of Tucker county, in an action of debt on a promissory note.

This action is similar in some respects to that of *Third National Bank* v. *Laboringman's Mercantile and Manufacturing Co.*, decided by this Court and reported in 49 S. E. 544. Some of the principles announced in that case are applicable and controlling here.

The note, bearing date January 24, 1901, is for the sum of $382.39, was payable thirty days after date at the office of

the Blackwater Lumber Company in Davis, West Virginia, and was signed "Laboringmans Mer. & Mfg. Co. P. M. Murphy, Pres." The parol evidence introduced is, in substance, as follows: A Thompson says Murphy approached him on the day of the date of the note and requested a loan, representing that the defendant company had a note due at the bank which it was unable to meet by a few hundred dollars, and also that there was an account due from it to the Blackwater Lumber Company, a corporation of which the said Thompson was practically the owner, which the defendant desired to pay. Thereupon Thompson prepared a note, and, after obtaining the signature thereto, gave his check for two hundred dollars, the difference between the amount due the Blackwater Lumber Company and the face of the note. Being asked, on cross-examination, whether the amount thus deducted was due from the defendant company or from the Davis Poultry Company, with which also Murphy was connected, he said he did not know, but had relied upon the information given him by Murphy, who had said "Our company owed the Blackwater Lumber Company." Whether the check was deposited to the credit of the defendant company in bank and the amount thereof checked out in payment of its debts or otherwise applied by it does not appear. After the note became due, it was protested, and notice thereof sent to the defendant company. Sometime thereafter, Thompson presented the note to the manager of the company at its office, and, later, to John F. Getty, supposing him to be one of the directors of the defendant company, but Getty seems not to have been a director until April 20, 1901. These demands were made probably in March or April, 1901. George B. Thompson testifies that very soon afterwards he called upon W. E. Patterson, secretary and director of the company, concerning the note and was told by Patterson that he knew nothing regarding it but would consult Murphy about it and send him down to see about it. John F. Thompson testified that he had presented the note in August or September, 1901, to W. W. Golightly, manager of the company, and demanded payment thereof and was informed that the directors would have to take action upon it before it could be paid. Having been informed that the directors would meet in a day or two, he went back the next week and was told

that they had decided that they had no right to act on matters of that kind, the meeting having been a special meeting, but that a regular meeting would be held soon, at which action upon it could be taken. After the regular meeting he went back and was informed that nothing had been done about the note. The book in which the directors recorded their proceedings shows two entries made on the 5th day of September, 1901, which are, respectively, as follows:

"On motion of Mr. Marks, seconded by Mr. Pressau, it was ordered that the demand of Mr. A. Thompson for the payment of the note of $382.39, contracted by P. M. Murphy be laid on the table."

"On motion of Mr. Marks, seconded by Mr. Pressau, it was ordered that the demand of Mr. A. Thompson, for the payment of the note of $382.39, contracted by P. M. Murphy, without the knowledge and consent of the directors, be laid on the table."

As tending to show acts from which the public might infer the authority of Murphy to borrow money for his company and execute its obligations therefor, it was shown that he had borrowed of George B. Thompson, January 15, 1901, two hundred dollars, and, on February 2, 1901, five hundred dollars, for which, on the last named date, he had given the defendant company's check, post dating it. When due, it was presented for payment and protested. Later, it was re-presented, upon information from Murphy that it would be paid, and was accordingly paid, but whether the money was deposited for that purpose by the company itself, or by Murphy, does not appear. On the 21st day of February, 1901, Murphy gave to F. A. Cruickshank the note of the company for two hundred dollars for money loaned by him, which note was afterwards paid in currency by P. M. Murphy. The evidence further discloses that at about the time the check, given to George B. Thompson, was protested, Murphy, with the knowledge and authority of the directors, was at Piedmont, West Virginia, attempting to raise money for the company on its note for two thousand dollars.

The question of liability was withdrawn from the jury by a demurrer to the evidence, which the court overruled and rendered judgment for the amount due as ascertained by the verdict.

It is not pretended that Murphy had any inherent author-. ity or power as president to borrow money and execute the ·company's note therefor. That such authority is not possessed by the president of a corporation, in the absence of .an express delegation thereof, has been determined by this Court. *Bank* v. *Kimberland*, 16 W. Va. 579; *Third National Bank* v. *Laboringman's &c. Co.* 49 S. E. 544. Nor is it pretended that he had any antecedent express authority from the board of directors to so bind the corporation.

The judgment rests upon two propositions, the first of which is that there is evidence which would justify a finding that the defendant, with full knowledge, allowed Murphy to .so act and deal, in respect to its business, as to constitute a representation to the public of authority in him to borrow ·money on its account. The facts relied upon to sustain this proposition are of the same character as those set up in *Third National Bank* v. *Laboringman's &c. Co.*, and, in that case, they were deemed and held wholly insufficient for that purpose. They were almost contemporaneous in date with the ·transaction with Thompson. It does not appear that he had .any knowledge of but one such transaction, namely, the first one had with George B. Thompson. Nothing in the testimony indicates that the directors of the corporation had any knowledge of this transaction subsequently had with George B. Thompson or the one had with W. W. Golightly. In the :absence of any knowledge of these facts on the part of the board of directors, there is no foundation for saying the corporation held Murphy out to the public as an agent authorized to borrow money for use in its business. A verdict of a jury, predicated upon such testimony, could not be sustained and, therefore, the evidence is clearly insufficient upon a demurrer thereto.

The other view is that of ratification of the unauthorized .act of the president. There is no claim of an express ratification. The contention is that it is a ratification by acquies- ·cence and retention of benefits. As noted in the statement of the evidence, it does not appear that the account which was set off against the note at the time of its execution was ·due from the defendant company. Mr. Thompson's evidence .goes no further than to say it was so represented to him by Murphy and he acted upon that information. Whether the

company received the benefit of the check given for the balance of the note does not in any way appear from the evidence. The alleged reception of benefits stands wholly upon the representations made to Mr. Thompson by Murphy. The check is not produced, so as to show whether it was payable to Murphy individually or to the defendant nor, if payable to the defendant, whether it was deposited to its credit or cashed by Murphy and the money used by him. Starting with the admitted fact that the act of Murphy in borrowing this money was outside of, and beyond, his authority, it would be contrary to legal principles to say that his representations or acts, relating thereto, are binding upon the company. What he said as well as what he did was beyond the scope of his authority, and it is well settled that, only such acts and declarations of an agent are binding upon his principal as were done and made within the scope of his authority. Had said sum of two hundred dollars been a debt due the defendant, it may be that it could have been rightfully paid to its president. This we do not decide. But it was borrowed money. The acquisition of it was an unauthorized act and the custody of it was, therefore, necessarily not on behalf of the principal. Hence, the agent's possession of it raises no presumption, and lays no foundation for an inference, that the principal received the benefit of it. It constituted no notice to the principal. "The rule, that notice to an agent of facts arising from and growing out of the subject matter of his agency, is constructive notice to his principal, has no application to the case where the question is, whether the act relied on to bind the principal, was done within the limit and scope of the agent's authority or not." *Express Co.* v. *Trego*, 35 Md. 47. Notice to an agent is only constructive notice to his principal, wherefore it is operative only as to matters within the scope of the agent's authority. Story's Agency section 140b; *United States* v. *Davis*, 2 Hill 451; *Bank* v. *Aymar*, 3 Hill 262. It will be hereinafter shown that a principal is not bound by an act of his agent beyond the extent of his authority, except by a ratification, after full knowledge of the material facts. This rule of itself negatives the view that the knowledge of the agent is notice to his principal. If it were, proof of knowledge would be unnecessary. As to such acts, there is no relation of princi-

pal and agent. The acts are not within the agency. This doctrine is not in conflict with the principles applied in *Lyttle* v. *Cozad*, 21 W. Va. 183. In that case, the act done was within the apparent authority of the agent. He merely violated secret instructions, not binding on strangers, having no knowledge of them. This clearly appears from the language of JUDGE GREEN'S conclusion. He said: "The sureties by entrusting the bond to the principal in such a case make him their agent to deliver the bond to the obligee, for this is the ordinary mode of conducting such transactions. And having given the principal instructions, that he must get other securities on the bond before he delivers it to the obligee, they by giving the bond in a perfect form trust him to carry out such instructions; and if he fails to do so but delivers the bond to the obligee in such perfect form, it must be obligatory on them, for it is their fault, that injury has resulted; and the loss thus resulting they cannot shift to the obligee by proving such private instructions given by them to the principal obligor, except where the obligee is guilty either of fraud or rashness in accepting such bond." This case is quite unlike that of *Bank* v. *Laboringman's &c. Co.* There, the evidence disclosed application of the borrowed money to the payment of the debts of the defendant. Its reception of the benefits of the unauthorized act was beyond question.

This may not, however, be conclusive of the case. A principal may ratify the unauthorized act of his agent without having received the benefit thereof. It may be that the defendant did receive the money notwithstanding the lack of evidence here to show that fact. The authorities do not seem to hold the reception of benefits to be an essential element of ratification. Nor is any reason perceived why it should be. It is necessary, therefore, to consider the other evidence relied upon to show ratification. This consists of the silence of the defendant from March or April, 1901, when, it is claimed, the note was brought to the attention of the general manager and one or more of the directors, until the 5th of September, 1901, a period of probably five or six months. "Where an agency actually exists, the mere acquiescence of the principal may well give rise to the presumption of an intentional ratification of the act." Story on Agency section 256. The authorities almost uniformly say that

acquiescence after knowledge of an unauthorized act is evidence of ratification, and such acquiescence need not be for any considerable length of time. The length of time will depend upon the nature of the transaction and the situation of the parties affected or interested. "Silence of the alleged principal, when fully advised of what has been done in his behalf by one who attempts to act as his agent without authority, may be sufficient from which to infer a ratification of the unauthorized act. *Lynch* v. *Smyth*, 25 Colo. 103; *Rae* v. *King*, 13 Colo. 69; *Union M. Co.* v. *Bank*, 2 Colo. 248; *Bank* v. *Fricke*, 75 Mo. 178. "Where the relation of principal and agent exists, but in the particular transaction the agent has exceeded his authority, an intention to ratify will be presumed from the silence of the principal beyond a reasonable time after having knowledge of the transaction, if he has an opportunity to express his dissent." *McGeoch* v. *Hooker*, 11 Ill. App. 649. "It is a salutary rule, in relation to agencies, that when the principal is informed of what has been done, he must dissent, and give notice in reasonable time, or otherwise, his assent to what has been done shall be presumed." *Cairnes* v. *Bleecker*, 12 Johns. (N. Y.) 300. To the same effect, see *Bredin* v. *Dubarry*, 14 S. & R. (Pa.) 30; *Fuel Co.* v. *Lee*, 102 Wis. 426; *McLaren* v. *Bank*, 76 Wis. 259; *Hoosac M. & M. Co.* v. *Donat*, 10 Colo. 529; *Breed* v. *Bank*, 4 Colo. 481; *Smith* v. *Fletcher*, 75 Minn. 189; *Sheldon &c. Co.* v. *Eickemeyer &c. Co.*, 90 N. Y. 607; *Alexander* v. *Culbertson &c. Co.*, 86 N. Y. 283; *Phillips* v. *Lumber Co.*, 130 Cal. 431: *Bank* v. *Railway Co.*, 117 Cal. 332; 4 Thomp. Corp. sections 5286, 5288.

Occasionally a case is found which seems to conflict with the proposition just stated. Thus, in *Railway Co.* v. *Jay*, 65 Ala. 113, the court seems to have inclined to the view that silence and acquiescence, after knowledge received, is not evidence of ratification, and that no duty rests upon the principal to disavow the unauthorized act of his agent, unless the party dealing with the agent would be misled to his injury by failure to repudiate the act promptly or the act is in reference to a matter as to which, by the usage of trade, a prompt reply is demanded when notice is given. For this proposition, *Smith* v. *Sheeley*, 12 Wall. 358, and 2 Greenl. Ev. section 66, are cited. Greenleaf on Evidence, Vol. II,

section 67, seems to assert two propositions, the first of which is that mere silence after notice of an unauthorized act, with full knowledge of the circumstances, is evidence of ratification, but not conclusive; and the second that if the silence of the principal is contrary to his duty, or has a tendency to mislead the other party to the transaction, it is conclusive. As an instance of this, the rule governing transactions among merchants, under which an act is deemed to be assented to, after the lapse of a reasonable time when notice thereof has been given is mentioned. This is a species of estoppel, rather than an instance of ratification by acquiescence, and it seems to be the principle which rules the case of *Smith* v. *Sheeley*. This distinction is marked in other cases. See *Smith* v. *Fletcher*, 75 Minn. 189; *Lynch* v. *Smyth*, 25 Colo. 103; *Breed* v. *Bank*, 4 Colo. 481. That acquiescence, with full knowledge of the material facts attending an unauthorized act is evidence from which a ratification may be inferred, when no element of estoppel is involved, is made plain by a number of decisions. Where the president of a corporation, without authority of the board of directors, sold all of its personal property and the purchase money was garnisheed in the hands of the vendee, by a creditor of the corporation, and no steps were taken by the debtor corporation either to affirm or repudiate the act of its president, the silence of the corporation was held to be sufficient evidence of ratification of the unauthorized sale. *Fuel Co.* v. *Lee*, 102 Wis. 426. Where officers of a corporation, without authority, have given liens upon its property by mortgage, third parties, such as unsecured creditors, cannot impugn the transaction on the sole ground of want of authority in the officers. *Moller* v. *Fiber Co.*, 187 Pa. 553; *Burr* v. *Potts*, 185 Pa. 115; *Ragland* v. *McFall*, 137 Ill. 81. In these cases, the only evidence of ratification is the mere silence and acquiescence of the principal.

These authorities may justify the position of counsel for the appellee in saying that acquiescence alone is evidence of ratification. The books assert the proposition over and over and contain numerous illustrations of it. But there is one element which enters into it that must not be lost sight of. When the circumstances are such as to call for the application of the law of estoppel, rather than the mere law of rati-

fication, it may be that the principal can bind himself without full knowledge of all the material facts. The situation may be such as to make it his duty to know. The means of knowledge may be at hand or within easy reach, and his relation to the third party such as to estop him from saying he is without knowledge. But, in the absence of such circumstances, the authorities are unanimous in holding that there can be no ratification by acquiescence, unless the principal has full and complete knowledge of all the material facts attending the unauthorized act. "Any ratification of an unauthorized act, in order to be made effectual and obligatory upon the alleged principal, must be shown to have been made by him with a full knowledge of all the material facts connected with the transaction to which it relates; and especially must it appear that the existence of the contract and its nature and consideration were made known to him." Mechem on Agency section 129. "A ratification of the unathorized acts of an attorney in fact, without a full knowledge of all the facts connected with those acts, is not binding on the principals. No doctrine is better settled on principle and authority, than this, that the ratification of the act of an agent previously unauthorized, must, in order to bind the principal, be with a full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is invalid, because founded on mistake or fraud." *Owings* v. *Hull*, 9 Peters 607. Want of such knowledge prevents the possibility of ratification by silence, and it invalidates an express ratification, as will be clearly disclosed by an examination of the following decisions: *Bosseau* v. *O'Brien*, 4 Biss. 395; *Fuller* v. *Ellis*, 39 Vt. 345; *Meyer, Weis & Co.* v. *Baldwin*, 53 Miss. 263; *Forrestier* v. *Bordman*, 1 Story 53; *Bank* v. *Bank*, 13 Bush. 526, 26 Am. Rep. 211; *Craighead* v. *Peterson*, 72 N. Y. 279, 28 Am. Rep. 150; *Reese* v. *Medlock*, 27 Tex. 120, 84 Am. Dec. 611; *Bennecke* v. *Ins. Co.*, 105 U. S. 355; *Lynch* v. *Smyth*, 25 Colo. 103; *Smith* v. *Kidd*, 68 N. Y. 130, 23 Am. Rep. 157; *Bell* v. *Cunningham*, 3 Peters 69; *Ward* v. *Williams*, 26 Ill. 447, 79 Am. Dec. 385; *Navigation Co.* v. *Dandridge*, 8 Gill. & J. 48, 29 Am. Dec. 543; *Combs* v. *Scott*, 12 Allen (Mass.) 495; *Bank* v. *Jones*, 18 Tex. 811; *White* v. *Davidson*, 8 Md. 169, 63 Am. Dec. 699; *Bannon* v. *Warfield*, 42 Md. 23; *Dilling-*

*ham* v. *Oberne, Hosick & Co..* 36 Kas. 284; *Bryant* v. *Moore,* 26 Me. 84, 45 Am. Dec. 96; *McCants* v. *Bee,* 1 McCord's Ch. 383, 16 Am. Dec. 610; *Billings* v. *Morrow,* 7 Cal. 171, 68 Am. Dec. 235.

From the review of the evidence herein given and conclusions stated, respecting the same, it is plain that full knowledge of the material facts, relating to the transaction between Murphy and Thompson is not shown to have been in the possession of the defendant corporation at any time before the institution of this action: Mr. Thompson does not testify to any statement, on his part, to the general manager or Mr. Getty, as to what the consideration of the note was. Nor is there anything in the testimony of John F. Thompson or George B. Thompson, tending to show that they revealed to any director the circumstances which constituted the ground for executing the note. No notice was given of the satisfaction of the Blackwater Lumber Company account out of the note or that the residue of it was represented by a check payable to the corporation. Nothing in the evidence shows that any record in the bank in which the corporation kept its deposits or on the books of the corporation itself, discloses the receipt of the money or its appropriation to the use of the defendant company. This failure to bring home to the defendant knowledge of the material facts, in connection with its silence, makes a fatal defect in the case, and, therefore, the court should have sustained the demurrer to the evidence.

Although no cross-assignment of error is made by the appellee, respecting the rulings of the court upon the evidence offered and rejected, it may be prudent to say whether the court erred in refusing to permit certain evidence to be introduced. The offers will be stated in the language of the record. On the examination of A. Thompson, his attorney made the following offer:

"The plaintiff proposed to prove by this witness that P. M. Murphy was held out to the public generally as the financial agent of the Laboringman's Mercantile and Manufacturing Company, and it was understood by the public generally that the said Murphy was the chief financial agent of the said Mercantile company, with the right to execute its notes and other paper, to secure loans for said defendant company and

so forth, to which offering the defendant objected, which objection was sustained, to which the plaintiff excepted, by asking the following questions:

Q.   Do you know the general reputation that Mr. Murphy has in Davis, with respect to this company,—the connection that he had with it, as to having charge of the finances and financial affairs of the Laboringman's Mercantile and Manufacturing Company?

Q.   Did you, at the time you loaned this money, understand, or have information that Mr. Murphy was the financial agent of this Company?

Q.   You may state who it was that seemed to have charge of the financial affairs of the defendant mercantile company.

Q.   You may state, if you know, how Murphy was held out to the general public with respect to transacting the financial affairs and business of the mercantile company, this defendant?"   Upon the examinations of witnesses George B. Thompson and F. A. Cruickshank, similar offers were made.

The testimony thus sought to be introduced related merely to reputation and common notoriety.   Such evidence would not, of itself, be sufficient to prove the authority of the agent.   "The existence of the relation of principal and agent cannot be shown by proof of mere general reputation, unless it is further shown that there was knowledge and acquiescence on the part of the alleged principal."   Clark & Skyles on Agency, section 68.   Evidence to prove a co-partnership is governed by the same principles, and 2 Greenleaf on Evidence, at section 483, says: "But evidence of general reputation, or common report of the existence of the partnership, is not admissible, except in corroboration of previous testimony; unless it be to prove the fact, that the partnership, otherwise shown to exist, was known to the plaintiff."   It would be at least necessary to show, in this connection, that the directors had knowledge of the common report as to the extent of the agency, and had failed to contradict it.   *Campbell* v. *Hastings*, 29 Ark. 512.   There is no suggestion in the offer of evidence of any intention to bring home to the defendant knowledge of the matters to which the witness proposed to testify.   To prove a course of dealing, it is necessary to show a series of specific acts of which the principal had knowledge and in which he acquiesced.   3 Elliott on Ev. sec-

tions 1633, 1634. The mode of proving agency by this kind of evidence is well illustrated by the following, taken from the opinion in *Eisenberg* v. *Mathews*, 84 Minn. 76: "Now, if the defendant had acted as plaintiff's agent in loaning money for him for some years prior to the time in question, such fact, and the number and character of the loans, and the course of dealing between the parties with reference thereto, would tend in a material degree to show that such agency still existed when the loan in question was made." "The accepted acts of an agent or officer of a corporation are always evidence to show the extent of his powers." *Bank* v. *Dandridge*, 12 Wheat. 64. It is not necessary, in order to constitute a general agent, that he should have before done an act the same in specie with that in question. If he has usually done things of the same general character and effect with the assent of his principal, that is enough. *Bank* v. *Norton*, 1 Hill (N. Y.) 501. These authorities sufficiently indicate the necessity of proving specific acts, done with the knowledge, consent and approval of the principal, in order to make out a case of agency or authority in the agent to do a particular act. Mere rumor as to the existence or extent of an agency, without proof of knowledge thereof, and acquiescence therein of the principal, of itself, constitutes no evidence of such fact.

As the demurrer to the evidence should have been sustained, and no error has been shown in the action of the court in excluding evidence offered, the judgment must be reversed, the demurrer sustained and judgment rendered here for the defendant, with its costs in the court below, as well as costs in this Court.

*Reversed and Judgment for Defendant.*