[No. 9120.     Department One.     February 20, 1911.]

S. A. KEENAN, *Respondent*, v. EMPIRE STATE SURETY COMPANY, *Appellant*, FRANK ARMSTRONG *et al.*, *Defendants*.[1]

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—MODIFICATION OF CONTRACT—WAIVER. A surety company guaranteeing the performance of building contract waives a provision that the owner shall retain fifteen per cent of payments due for labor etc. until after completion of the contract, where, with the knowledge and cooperation of the agent to whom the company referred the matter, the contract was modified and the owner authorized to pay obligations as they accrued.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT. A surety company having in writing notified the obligee that the adjustment of the principal's default had been referred to a particular agent, it is within the scope of the agent's powers, in the absence of any express limitation, to waive performance of the terms of the bond.

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—AGREEMENTS. An agreement between a surety company and the obligee on the bond that a certain person should act as an arbiter between them is not void by reason of the fact that such person was a debtor of the obligee, there being no showing that he did not act disinterestedly.

Appeal from a judgment of the superior court for King county, Gay, J., entered June 25, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on an indemnity bond. Affirmed.

*F. C. Kapp*, for appellant.

*H. A. P. Myers* and *Keenan & Hardinger*, for respondent.

[1]Reported in 113 Pac. 636.

FULLERTON, J.—On January 19, 1909, the respondent entered into a contract with the defendants, Frank Armstrong and Fred E. Enevoldsen, whereby they undertook to furnish all the necessary labor and material and construct an apartment house on a certain described lot for a consideration of $13,500, "less two hundred dollars ($200) reserved for the payment of hardware for said building." The contract was in writing, and was on the form adopted and recommended for general use by the American Institute of Architects and the National Association of Builders, and contained, among others, a provision to the effect that should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or materials of proper quality, or fail in any respect to perform the work with promptness and diligence, and such refusal, neglect or failure be certified by the architects, the owner, after three days' notice to the contractors, should be at liberty to perform the same and deduct the cost thereof from any money then due, or thereafter to become due to the contractors under the contract. It also provided that, should the architects certify that there was sufficient ground for such action, the owner should be at liberty to terminate the contract, enter upon and take possession of the building, and complete the work according to the contract, at his own expense, and account to the contractors only for such balance as might remain after deducting the cost of the completion of the building from the unpaid balance of the contract price.

At the time of the execution of the contract, the contractor executed a bond to the respondent with the appellant Empire State Surety Company as surety, conditioned for the faithful performance of the contract. The bond contained further stipulations to the effect that the owner should give notice to it at its office in New York city of any default on the part of the contractors in the performance of any of the conditions of the contract within fifteen days after the default occurs, and should retain not less than fifteen per centum of

all payments for work performed and materials furnished in the performance of the contract until the complete performance by the contractors of all the conditions of the contract on their part to be performed, and until the expiration of the time in which liens can be filed, and until the cancellation and discharge of liens if any are filed.

The contractors entered upon the performance of the contract immediately after its execution, and during the first month thereof performed labor upon, and furnished material for, the construction of the building which entitled them, according to the architects' estimate, to the sum of $660. This sum was paid them by the owners, and the work was continued for another monthly period. At the end of that time, the contractors informed the owner that they were unable to meet the expense incurred for labor and material during the preceding month, as required by the contract, and consequently could not obtain the architects' certificate which authorized the second monthly payment to them by the owner, and requested the owner to make payments directly to the laborers and materialmen, at the same time confessing their inability to proceed further with the contract according to its conditions. The owner thereupon procured from the architects a certificate to the effect that the contract had been violated by the contractors, setting out the particulars, and that the respondent was authorized and empowered to take possession of the work and complete it himself. A notice was immediately sent to the surety company notifying them of the default on the part of the contractors, together with a copy of the architects' certificate, accompanied by a demand that it take upon itself the completion of the work. A letter was sent the owner by the surety company acknowledging the receipt of the notice, and stating that the matter had been taken up with their local agent, who had been instructed to give it attention and report. The owner thereupon called on the local agent named in the letter, and was informed that a Mr. Eldredge would call upon him. Mr. Eldredge called as

stated, and an arrangement was made whereby the contract-
ors left the construction of the building in the charge of a
Mr. Burgess, the then acting superintendent for the con-
·tractors, who undertook to superintend the final construction
of the building on behalf of the contractors, the owner agree-
·ing to meet the bills for such labor and materials as should be
necessary to complete the work. The consent of the contract-
ors to this arrangement was put in writing, this being pro-
cured from the contractors by the agent of the surety com-
pany. The building was completed according to this arrange-
ment, at an expense to the owner of $20,507.87.

In the final estimate made by the architects it was found
that $2,078.31 of this sum had been paid for labor and
materials not contemplated in the original plans, although
permitted by the contract, and that certain deductions had
been made from the original plans, making a saving in the
cost of the building of $460, leaving a net excess in the cost
of the building over and above the contract price of
$5,589.56. The contract called for the completion of the
building on April 20, 1909. It was in fact completed on
July 10, 1909, and for this delay the owner claimed the sum
of $700. Demands for these sums were made upon the surety
company, but the company denied liability, and the present
action was begun to recover the amount thereof. Judgment
went for the owner, and the appeal was taken therefrom by
the surety company.

The principal contention urged for reversal is that there
was a breach of the condition of the bond. It is claimed that
the owner did not retain fifteen per centum of all payments
becoming due for labor performed or materials furnished
until after the completion of the work by the contractors.
But notwithstanding its strenuous contention to the contrary,
it is clear that this condition of the bond was waived by the
surety. It will be remembered that the contractors, at the
end of the second month, announced their inability to perform
the contract according to its terms, and their requirement of

financial assistance if the building was to be completed at all; that this condition of their affairs was made known to the surety company by the owner, and that the surety company referred the matter to their agents, who took the matter up with the owner with the result that the owner agreed to so far modify the contract as to pay the obligations incurred in the construction of the building as they matured. Since this was done with the knowledge and co-operation of the surety company's representative, it is enough to show an implied assent thereto on the part of the surety company, although it may be that there is no evidence in the record of an express assent on the part of the surety company or its representative to a modification of the contract.

It is argued also in this connection that there is no proof in the record that the surety company ever authorized its representative to waive any of the conditions of the bond, but as to this it is enough to say that the company stated, in writing to the owner in answer to his notification, that it had referred the matter to the particular agent, without stating that any limitations had been put upon his powers. A general agent's powers, in the absence of express limitations, is limited only by the scope of his agency, and here it was well within the scope of the agent's powers to waive the performance of the provisions of the bond thought to have been breached.

It appears that, in the settlement by which the owner agreed to advance the costs necessary to complete the building, it was first made a condition thereof that a certain payment should be made by the person left in charge by the contractors, to the owner, the agreement being evidenced by a writing stating its terms, and a promissory note. The surety company claims that this agreement operated to relieve it from liability, on the principle that the maker of the note thereby became the debtor of the owner, and was not, for that reason, at all times free to represent his principal. But the contention is not tenable. It is not a general equitable principle that a debtor cannot be presumed to act disinterestedly be-

tween his creditor and another when he is placed in the position of arbiter between.  To avoid liability on its obligation in this instance, therefore, the surety company would have to show something more than the mere fact; it would at least have to show that the arbiter did not act disinterestedly, and that his acts resulted to its prejudice.  There was no such showing here.

At the trial the appellant offered to show that certain of the extras put into the building cost more than the architects allowed for them, and it is contended here that the court, on the objection of the respondent, refused to admit the evidence.  The record upon this question is somewhat confusing, but, as we read it, the court did not exclude any competent evidence offered upon the question.  He permitted a witness to testify that a certain garbage chute, for which the architects allowed an extra of forty dollars, would cost to put in at least one hundred and forty dollars.  It also permitted a witness who had examined the buildings and plans to testify that a certain statement which the witness presented, and which was admitted in evidence, contained the result of his examination.  True, certain offers of proof were rejected, but these seem to us to be too indefinite on which to base a claim of error.  We are unable to find, therefore, that the court rejected any competent proofs offered by the appellant.  The value of the extras furnished was the only part of the respondent's case affecting the amount of the recovery that the appellant sought to controvert.  On the value of these its witness who furnished the complete estimate differed but little more than one dollar from the estimates put thereon by the architects.  If we were to accept as true the estimates of the witness who testified to the cost of the garbage chute, the difference would be but one hundred dollars; but we think the latter's chances for observation were not better than the architects or the other witness called by the appellant, and we prefer to take their evidence as to these values than the evidence of the witness who differed from them.

These views of the case require an affirmance of the judgment, and it will be so ordered.

Gose, Mount, and Parker, JJ., concur.