The G. C. Murphy Company is a Pennsylvania corporation engaged in a chain store business. The plaintiff, Mack Realty Company, is another Pennsylvania corporation, and according to the testimony of one of its officers "is just the real estate department of the G. C. Murphy Company, and is owned body and soul by the G. C. Murphy Company." The defendant, Beckley Hardware Supply Company, is a West Virginia corporation engaged in the hardware mercantile business in the city of Beckley. In 1924 defendant's board of directors conferred authority on T. E. Bibb, its president and general manager, to sell a building which it owned in that city, at the minimum price of $75,000.00. In 1925, no purchaser having been found for the building, Mr. Bibb reported to the board that he had applications from several renters and recommended that certain improvements be made on the building with a view to renting it. Mr. Bibb's recommendation was approved, about $10,000.00 was spent in remodeling the building, and it was then rented advantageously. In July, 1928, Paul R. Reed and Walter C. Shaw, who are officers of the G. C. Murphy Company, conferred with Mr. Bibb in the presence of his sons, E. E. Bibb and C. A. Bibb, relative to purchasing the property. E. E. Bibb is a director and secretary and treasurer of defendant; C. A. Bibb is a stockholder. According to Reed and Shaw, T. E. Bibb said that he would like to discuss the terms of sale with another of his directors, but that it did not matter as the board of directors had already given him authority to sell the property at $75,000.00. He thereupon agreed upon terms of an option and on the following day, July 12th, he executed an option under the seal of defendant, giving to the Murphy Company the right for a period of twenty days to purchase the property at $75,000.00, of which amount $15,000.00 was to be paid cash, an indebtedness of $30,000.00 was to be assumed, and the balance was to be paid in five annual installments of *Page 294 
$6,000.00 each. The option was prepared by W. H. Rardin, an attorney, who was a director of the defendant, and occasionally acted as its attorney. On July 31st the Murphy company both wired and wrote an acceptance of the option to the defendant. On August 10th, Rardin as attorney of the defendant, wrote the Murphy company acknowledging receipt of the acceptance of the option and advising: "The question of whether or not the stockholders will ratify the sale of this property is being discussed by some of the stockholders." On August 16th, representatives of the plaintiff, Mack Realty Company, came to Beckley for the purpose of closing up the option which had been assigned to it. At that time the plaintiff's representatives were informed by attorney Rardin that the defendant was not ready to close; that some of its directors did not approve of the option, and no definite reply could be given until after a stockholders' meeting. A meeting of the board of directors and stockholders of the defendant was held on August 23rd when the option was disapproved. The Murphy company was so notified the following day. This is a suit for specific performance of the option. The circuit court found in favor of plaintiff.
Plaintiff's brief states that it places no reliance upon the special authority conferred on T. E. Bibb by the defendant's board of directors in 1924. Lapse of time and changed conditions had of course annulled that power. See Clark 
Skyles on the Law of Agency, section 183. Besides, power to sell does not imply power to sell on credit or to option.Dyer v. Duffy, 39 W. Va. 149; Tibbs v. Zirkle, 55 W. Va. 49; Mechem on Agency (2nd Ed.), section 816, 819; Tiffany on Agency (2nd Ed.), section 24, p. 71.
It is settled law that T. E. Bibb had no implied authority by virtue of his position as president and general manager of the defendant to execute the option. That power was not connected with the "ordinary business entrusted to his management."Carroll-Cross Co. v. Abrams Cr. Co., 83 W. Va. 205, 212-213;Kelly Co. v. Rhodes, 102 W. Va. 16; Varney Evans v.Hutchinson Co., 70 W. Va. 169; Cook on Corp. (8th Ed.), section 716, 719. T. E. Bibb, and E. E. Bibb as directors could not agree outside of a meeting of the board and *Page 295 
bind the defendant by the option. "The authority of the directors or trustees is conferred upon them as a board, and they can bind the corporation only by acting together as a board; a majority of them in their individual names cannot act for the board itself and bind the corporation." 7 R. C. L., p. 439, section 427. Limer v. Traders Co., 44 W. Va. 175; Lawrence
v. Gas Co., 88 W. Va. 352, 358; Cook, supra, sec. 712. Neither could they as such officers and directors, ratify an unauthorized act committed by themselves. 14a C. J., p. 376, sec. 2234. Therefore unless T. E. Bibb had special authority from the board of directors to execute this option, it was invalid.
But, says the plaintiff, the defendant had clothed T. E. Bibb with the apparent authority to sell the property. This claim is based on the fact that T. E. Bibb had executed four leases to tenants of the building in question, without express precedent authority from defendant. It might well be contended that authority to rent the property was incidental to the power given T. E. Bibb by the board of directors to improve it for the purpose of renting it. Story, Law of Agency, sec. 97; Mechem, supra, sec. 789. However that may be, power to lease is radically different from power to sell. The one indicates an intention to retain the property, the other an intention to dispose of it. Therefore authority to sell cannot be implied from authority to lease. "If the agency arises by implication from numerous acts done by the agent, with the tacit consent or acquiescence of the principal, it is deemed to be limited to acts of the like nature. * * * An implied agency is never construed to extend beyond the obvious purposes for which it is apparently created." Story, supra, sec. 87. Moreover, the representatives of the Murphy company do not claim that they were led to believe that T. E. Bibb had the power to give the option because of his conduct in regard to the leases. It is not shown that they even knew of his connection with the leases. Their knowledge thereof, acquired subsequently to their conferences with Mr. Bibb in regard to the option, has no bearing upon the question. 21 C. J. 1132. It is unquestioned that whoever would rely on *Page 296 
conduct as an estoppel must have been misled thereby. ThePeople v. Bank, 75 N.Y. 547; Lawrence v. Gas Co., supra, 359, 360, 361; 14a C. J., p. 371; 21 C. J. 1172-3-4.
The plaintiff then says that a presumption of authorized execution arose from the option being signed by the president of defendant and sealed with its corporate seal, which has not been overcome, citing Deepwater Co. v. Remick, 59 W. Va. 343,346. The record does not support this claim. E. E. Bibb stated that the authority given his father by the board of directors in 1924 was the only authority ever given him to sell the property. J. O. Freeman, who has been director since 1925, testified that the board of directors had given T. E. Bibb no authority to sell the building since then. The evidence of these witnesses is admissible and uncontroverted. See Thompson on Corp. (3rd Ed.) sec. 3286. "When the facts themselves are in evidence, there is no place for a presumption as to those facts." Burge v. Ray. Co., 244 Mo. 76, 95. Jones Comm. on Ev. (2nd Ed.), sec. 32, p. 62; Dwight v. Hazlett, decided on April 9, 1929, by this Court; Cook, supra, sec. 722; 14a C. J. 398. Plaintiff seems to labor under the impression that this presumption can be rebutted only by the records of the defendant. On the contrary, the corporate books are not admissible for that purpose. "Whatever may be the rule as to the records being evidence against the corporation itself, or against its officers and stockholders, it is clear that generally they are not competent to establish a right as against third persons." Thompson, supra, sec. 1969. Cook,supra, sec. 714; Jones Comm. on Ev. (2nd Ed.), sec. 1735; 7 R. C. L., p. 153-4, sec. 124; 22 C. J., sec. 1095. See also the masterly analysis of this subject by JUDGE POFFENBARGER in C. O. Ry. Co. v. Deepwater Ry. Co., 57 W. Va. 641, commencing on page 677.
Plaintiff also contends that the delay of defendant in repudiating the option amounted to a ratification. Mere silence or delay in disapproving an unauthorized act of agency for an unreasonable time may furnish a presumption of approval in some cases. Thompson, supra, sec. 2132; Mechem, supra, *Page 297 
sec. 453, 455; Story, supra, sec. 256; Smith v. Fletcher,75 Minn. 189, 193-4; Thompson v. Mfg. Co., 60 W. Va. 42, 48-9, and authorities there cited. What is an unreasonable time must necessarily depend upon the situation of the parties and the circumstances of each case. Mechem, supra, sec. 463; Tiffany,supra, sec. 58; Thompson, supra, sec. 2131. Here, the knowledge of the several directors that T. E. Bibb had given the option, was knowledge of an act not connected with the usual business entrusted to them individually by the defendant, and is therefore not to be imputed to it. Mechem, supra, sec. 1831, 1851-2-4; Clark Skyles, supra, sec. 490; Clark and Marshall, Private Corp., sec. 721; Thompson, supra, sec. 2135. The wire and letter of acceptance dated July 31st, being addressed to the defendant, attention of T. E. Bibb, president, was notice to the defendant, as he was a proper official under the law to be served with such a notice. Thompson, supra, sec. 1784;; Mechem, supra, sec. 1843; 14a C. J., sec. 2352, 2355. The option was repudiated by defendant on August 24th which was less than a month after receiving notice. We cannot say as a matter of law that the delay of twenty-four days was so unreasonable under the circumstances of the case as in itself to manifest ratification, particularly in view of the information given plaintiff by attorney Rardin on August 10th that ratification of the option was a matter of discussion among the stockholders, and on August 16th that there was active opposition to the option. "Where there is no express ratification, the facts and circumstances from which a ratification may be inferred must be such as are inconsistent with a different intention." Heyn v. O'Hagen, 60 Mich. 150,156. Mechem, supra, sec. 474.
An estoppel may arise where inaction operates to the prejudice of an innocent party. Plaintiff invokes that rule because of the following facts: On August 16th, before the conference with representatives of defendant, agents of the Murphy company closed a contract with a third party in Beckley whereby the Murphy company leased another building for a term of twenty-five years involving a total payment of rent amounting to $180,000.00. The officers of the Murphy *Page 298 
company testify that neither the defendant's building nor the leased building is sufficient alone for the purpose of their company, that both buildings are necessary, and that they never would have executed the lease had it not been for the rights which they thought had been secured by the acceptance of the option. This contention overlooks the fact that despite the relation of the plaintiff to the Murphy company, they are separate corporations and are regarded at law as distinct entities. Being distinct, it does not follow that an injury to the Murphy company is likewise an injury to the plaintiff. Besides it is not shown that defendant had any information whatsoever that the Murphy company intended to secure some other building in connection with the building optioned. One should be aware of the probability that delay may mislead another before he will be estopped because of delay. Pomeroy Eq. Juris. (4th Ed.), sec. 805; Mechem, supra, secs. 456, 457;Bates v. Swiger, 40 W. Va. 420, 427; Williamson v. Jones, 43 W. Va. 562,572; Columbus Co. v. Miller, 74 W. Va. 686.
Plaintiff would also have applied in its favor the rule that where one of two innocent parties must suffer, the one who made the injury possible must bear the loss. The facts do not warrant the application of the rule. The plaintiff is not shown to have suffered injury, and the defendant did not even make possible the alleged injury to the Murphy company.
The Bibbs are controlling stockholders of defendant. Plaintiff further says that to permit the defendant to repudiate the action of its chief officials and controlling stockholders is to permit the perpetration of a fraud. As has been already shown, the defendant is not bound by the unauthorized act of its officials. Neither is it bound by the conduct of its controlling stockholders outside of a corporate meeting. If fraud there be, it is not the fraud of defendant. "It is a familiar rule of law that a corporation has a personality of its own, distinct from its stockholders, and it is not affected by contracts made by its stockholders with third persons whether they own much or little of its capital stock. * * * The members of a corporation cannot like members of a co-partnership, make an agreement among themselves informally. The corporation must act as a body." *Page 299 
7 R. C. L., p. 305, sec. 281. Cook, supra, sec. 709; 14 C. J. 863, 865-6.
The decree of the circuit court is accordingly reversed, and the plaintiff's bill dismissed.
Reversed; bill dismissed.