[No. 25329. Department One. July 10, 1935.]

ASSOCIATED INDEMNITY CORPORATION, *Respondent and Cross-appellant,* v. KING COUNTY SCHOOL DISTRICT No. 181, *Appellant,* NATIONAL LUMBER DISTRIBUTORS *et al., Defendants.*[1]

[1]Reported in 47 P. (2d) 10.

*Allen, Froude & Hilen, Warren G. Magnuson,* and *Wm. H. Moore,* for appellant.

*Grinstead, Laube & Laughlin* and *Arthur Grunbaum,* for respondent.

Tolman, J.—Respondent, as plaintiff, by its complaint in this action set forth a building contract between the defendant school district and the defendant Lovell, by the terms of which Lovell agreed to do certain work for a specified sum, payment to the extent of eighty-five per cent to be made to him as the work progressed and the remaining fifteen per cent to be retained until after the completion and acceptance of the work. The contract, among other things, provides:

"Article 5. Acceptance and Final Payment—Final payment shall be due thirty days after substantial completion of the work provided the work be then fully completed and the contract fully performed.

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the architect shall promptly make such inspection, and when he finds the work acceptable under the contract and the contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the contractor, and noted in said final certificate, is due and payable.

"Before issuance of final certificate the contractor shall submit evidence satisfactory to the architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

The plaintiff became the surety on the contractor's bond. Certain facts bearing upon the question of the completion and acceptance of the work were pleaded,

and it is then alleged that, on October 19, 1931, final payment of the retained percentage was made to the contractor; but that, thereafter, there were presented and filed with the school district the claims of a number of materialmen against the retained percentage and against the bond, and that action is threatened thereon. The prayer of the complaint is for determination of whether or not the retained percentage was illegally paid, whether the claims referred to were timely filed, and to what extent, if at all, the plaintiff, as surety upon the contractor's bond, is liable therefor, and

"(4) That, if the court finds that any of said claims constitutes a valid charge and demand against plaintiff herein, the defendants, State of Washington, King County School District No. 181, H. T. Lundy, W. W. Watson, G. J. Gwinn, and W. A. Lovell be required to restore the amount of the retainage on said contract and that said fund be applied in payment of said claims so held to be valid."

The contractor defaulted, but issues as to the school district and as to the claims of the various claimants were made up. The cause proceeded to trial on the merits to the court, sitting without a jury, resulting in a decree which awards judgment to certain claimants against the contractor and the surety on his bond; a judgment to certain claimants against the school district in a sum equal to the retained percentage, with a proviso that amounts collected thereon shall be credited upon the judgments in favor of those claimants and against the surety on the bond, and that satisfaction of their judgments against the surety shall constitute a satisfaction of their judgment against the school district. The surety was given a judgment against the contractor and a judgment against the school district for the full amount of the retained percentage, together with the full amount, including in-

terest, costs and attorney's fees, allowed to the several claimants against the bond. The school district has appealed from all portions of this decree which adversely affect it, and the plaintiff has appealed from that portion of the decree which allows recovery by the materialmen against it.

The school district on its appeal seems to raise four questions, the first of which, and one upon which it places great stress, is a question of fact · only, namely: Did the school district accept the work as completed, or substantially completed, at its meeting of September 1, 1931, or at any time more than thirty days prior to the day when the retained percentage was paid to the contractor?

The evidence upon this issue is involved, conflicting, and in some respects painfully close. The minutes of the meeting of the school directors of the date relied upon fail to show anything indicating that an acceptance was then considered, although there was oral testimony that a motion was adopted accepting the work as substantially completed. The testimony of the architect rather clearly indicates that there was no acceptance at that time, and our study and search of the testimony in the written form as here presented has failed to reveal anything which will warrant us in deciding that the evidence preponderates against the trial court's holding that there was no acceptance before October 15, 1931. This being so, we cannot disturb the holding that the claims of the materialmen were timely filed, were entitled to the protection of the bond, and were valid liens on the retained percentage if improperly paid.

It is, however, contended that none of the materialmen brought any action within four months of the time when their claims were filed, and therefore that none can now complain because of the payment

to the contractor. This contention is answered by the case of *United States Fidelity & Guaranty Co. v. Montesano,* 160 Wash. 565, 295 Pac. 934, where, in deciding a like question, it was said:

"When it paid to the contractors that reserved fund within ten days after acceptance of the bridge, the city breached the contract and violated the statute; the city made it unnecessary and useless to file a notice of claim of lien against the reserved fund, as there was no reserved fund by reason of its misappropriation by the city.

"The breach of the contract and violation of the statute on the part of the indemnified respondent, resulted in damage to the appellant surety, therefore the appellant should be compensated for such damage, the extent of which is the amount of the retained fund wrongfully paid by the respondent to the contractors."

Moreover, this action was brought to settle all controversies and to bind all interested parties, and it was instituted well within the four months period and was a sufficient compliance with the statutory four months limitation.

The third point raised the question of consent by the surety to the payment of the retained percentage as and when such payment was made.

It appears without dispute that one Wayne C. Meek is the attorney-in-fact who executed the bond with which we are here concerned, for and on behalf of the surety, and that, pursuant to notice to the surety, Meek attended the meeting of the school directors which was held on October 19, 1931, for the purpose of making final settlement with the contractor. Meek was, of course, cognizant of all that then took place; and if he had authority, express or implied, to then represent it, he and it were charged with notice that the written minutes showed no prior acceptance of the work, and it was his duty to ascertain at his peril

whether final payment could then be properly made before consenting to such final payment. The minutes of that meeting show that the clerk of the district was directed to obtain the approval of Mr. Meek before delivering the final voucher, and that he did so. The voucher bears the endorsement "Approved for payment, Associated Indemnity Corporation by Wayne C. Meek." It is apparent that, if the attorney-in-fact Meek acted within his actual, apparent or implied authority, his consent must be held to be binding upon his principal.

A certified copy of the power of attorney under which Mr. Meek presumably acted is found among the exhibits and bears the number 172. By this power of attorney, he is granted authority to make, execute and deliver bonds and undertakings, the penal sum of no one of which shall exceed seventy-five thousand dollars; all such undertakings so signed to be binding upon the Associated Indemnity Corporation to the same extent as though signed by its president and secretary and sealed with its corporate seal. The written power of attorney is silent as to any other power granted to the attorney-in-fact.

Attached to the power of attorney, as it appears in evidence, is a so-called "Letter of Restrictions to Accompany General Power of Attorney No. 172" (but nothing is said in the power of attorney to indicate that the restrictive letter is made a part of the power of attorney). The letter forbids the execution of certain classes of bonds, not here involved, without special authority, and carries a paragraph which reads:

"No CONSENTS on your behalf as surety to any change, alteration, modification, extension of time, or consent to final payment in connection with any bond after bond has been executed and delivered, shall be granted by you without first having secured authority from the head office or the Seattle office."

We find nothing in the abstract to indicate that this so-called letter of restrictions was ever brought to the attention of the school directors or any one else other than Mr. Meek himself. It is said that the original power of attorney is on file with the prosecuting attorney of King county, and upon that statement is based the argument that it was a public document, of which the school directors were bound to take notice; but we find no testimony substantiating the statement or indicating that the restrictive letter was ever made public in any way. Without going into that question, we shall assume, for present purposes, that the school directors had notice of what the written power of attorney contains. We find, however, nothing upon which to base an assumption that they were in anywise cognizant of what is contained in the so-called letter of restrictions.

Notice of authority to execute contractor's bonds in any amount up to seventy-five thousand dollars, coupled with the fact that Mr. Meek executed the bond which is here involved and that he was the only representative of the bonding company known to them in the transaction, it seems to us is sufficient to create apparent or implied authority in him to consent to the final payment. We accept the general rule stated in 2 C. J. 645, to the effect that an agent employed to make a contract has no implied power to rescind or modify it; but one who is given express authority to bind his principal up to seventy-five thousand dollars may, we think, in the absence of notice to the contrary, reasonably be assumed to have implied power to deal with all minor and incidental questions related thereto which may arise during the life of the bond.

Here, there was no attempt to rescind or modify the contract or to waive or give up rights which belonged to the surety under the terms of the bond.

The surety was bound to know the financial situation at the time when the work had been completed, accepted and final payment was .demanded, to inform itself as to the existence or nonexistence of claims against the bond, and to approve or refuse to approve of payment when properly requested. The agent, who could himself write the bond and bind his principal without seeking counsel or consent from any one, had, it seems to us, apparent or implied authority to consent to the final payment under the situation here shown.

No authority is cited which is based upon exactly similar facts, and none which can be said to be exactly in point. Perhaps the case most nearly in point is that of *Eilers Music House v. Hopkins,* 73 Wash. 281, 131 Pac. 838. See, also, *Keenan v. Empire State Surety Co.,* 62 Wash. 250, 113 Pac. 636, and *Parsons v. Pacific Surety Co.,* 69 Wash. 595, 125 Pac. 954.

The testimony of the agent, long after the event and upon the trial, to the effect that he had no authority to approve the payment, is a pure conclusion upon his part, which carries no weight. The question of apparent authority is to be determined from the situation as it was known to the school directors at the time when they directed payment to be made only with the agent's approval. Reason alone, we think, supports the view that, at that time, the school directors were justified in accepting the agent's approval as binding upon his principal. That being so, the school district incurred no legal liability in so paying the retained percentage, and the judgment against it must be reversed.

The appeal by the plaintiff, Associated Indemnity Corporation, was taken, we assume, as a precautionary measure to protect its interest in the event that this court should reverse the case upon the point first herein

discussed. Having on that point held that there was no acceptance of the work prior to October 19, 1931, there remains nothing to be considered upon plaintiff's appeal, and as to it, the judgment must be affirmed.

Reversed, with directions to modify the judgment in accordance with the views herein expressed.

MAIN, BEALS, STEINERT, and GERAGHTY, JJ., concur.