**DON KEMPER COMPANY, Inc.**

**v.**

**BENEFICIAL STANDARD LIFE INSURANCE COMPANY, Appellant.**

**No. 17050.**

United States Court of Appeals
Third Circuit.

Argued May 9, 1968.

Decided Oct. 25, 1968.

Amended by Supplemental Opinion and
Rehearing Denied Jan. 13, 1969.

Owen B. Rhoads, Dechert, Price & Rhoads, Philadelphia, Pa. (Richard J. Braemer, Philadelphia, Pa., Ralph B. Umsted, Philadelphia, Pa., Edward J. Falls, Los Angeles, Cal., on the brief), for appellant.

Valera Grapp, Dayton, Ohio, and Tom P. Monteverde, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Lawrence T. Hoyle, Jr., Philadelphia, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellee.

## OPINION OF THE COURT

Before McLAUGHLIN, FREEDMAN, and VAN DUSEN, Circuit Judges.

GERALD McLAUGHLIN, Circuit Judge.

Appellee sued appellant for certain alleged advertising work, labor and services, claiming appellant was directly or impliedly responsible therefor. The case was tried to a jury, resulting in a judgment in favor of the plaintiff for $32,451.49 plus interest. On October 25, 1967 the Court without opinion denied defendant's motions for judgment n.o.v. and in the alternative for a new trial. This appeal followed.

Setting out the basic facts as briefly as possible, the evidence shows that around the beginning of 1963 Mrs. Margaret Hughes, the owner of a New York advertising agency, suggested to Arthur Gillman, a member of Gillman Associates, a New York insurance agency, the idea of promoting health and accident insurance policies for people who abstain from drinking alcoholic beverages. In accord with this, Gillman and

Joel Price of his firm sought out the Beneficial Insurance Group in New York. The latter embraced a number of insurance companies, including defendant-appellant. Price and Gillman after going over preliminary questions with Group representatives went to Philadelphia and talked with Beneficial Standard people regarding such contemplated abstainers policy. The parties agreed that Price and Gillman would have exclusive right to handle the policy to be issued by appellant or one of the Group companies if Price and Gillman would provide certain advertising and promotion for the policy. Mrs. Margaret Hughes, then connected with Thomas and Whitney Associates an advertising agency, offered her services to Price and Gillman to furnish an advertising campaign including the funds to support it. On March 22, 1963 Gillman wrote Alfred Golden, a vice president of appellant, setting out his understanding of the responsibilities to be undertaken by National Abstainers Agency, and the Beneficial Insurance Group. The former was to be a wholly owned corporation to be established by Gillman Associates and which was to merchandise the Abstainer program. During the first year its advertising promotion budget was to be approximately $250,000. with the provision that "Increased amounts will be subsequently invested if initial first year efforts are successful." Mrs. Hughes was to direct the advertising program. Gillman provided that "The Beneficial Insurance Group and its member companies will give full support to the program from a technical, underwriting and sales standpoint." The Agency was given the "exclusive privilege of merchandising the 'Abstainer Policy' throughout the United States subject to the following conditions: * * *." The Agency was to be given 75% of the Commission on Quarterly Premium payment mode policies, 70% Commission on Semi-Annual modes and 60% on annual modes. Appellant by Mr. Golden and its manager of Special Risks Division agreed that: "The conditions set forth above are acceptable to the Beneficial Standard Life Insurance Company of Los Angeles."

On March 20, 1963, Abstainers, Inc. and Mrs. Hughes entered into an agreement (modified by a subsidiary agreement between said parties of April 19, 1963) whereby Mrs. Hughes was to handle the advertising campaign, that Abstainers, Inc. " * * * shall be obligated to pay monies to Hughes only, for advertising and promotion matter expended by her or contracted by her. * * * The Corporation shall pay to Hughes 50% of all commissions it actually receives in cash from the sale of their Abstainers policy, to pay for her advertising expenditures. Payments to Hughes are to be made in accordance with this clause only, * * *." Abstainers, Inc. gave Mrs. Hughes an exclusive contract to act as its advertising agent for advertising placed by it. As stated by Price of Abstainers, Inc. in his trial testimony and not denied, Mrs. Hughes said "I have the financing. I can get the program off the ground." Mrs. Hughes, working with Abstainers, Inc., planned the advertising, including the brochures for which she was paid by Abstainers, Inc. She placed advertisements in various specialized magazines in which Abstainers, Inc. was the advertiser of the Beneficial Insurance Group's abstainer policies.

In August of 1963 the plaintiff advertising agency was endeavoring to buy a small New York advertising agency. Mrs. Hughes talked with plaintiff's president regarding this and showed him her agreement with Abstainers, Inc. Plaintiff employed her, made her a vice president of the corporation and accepted responsibility for the advertising she had placed for Abstainers, Inc. From then on all matters in connection with the advertising of the policies were sent to Abstainers, Inc. The first time plaintiff had anything to do with defendant was in December 1963 when the former's executive vice president talked by telephone to one of defendant's officers and told of plaintiff having trouble being paid by Abstainers, Inc. After

that Price wrote plaintiff stating that Abstainers, Inc. would not pay plaintiff because it was only required to pay Mrs. Hughes under her contract with Abstainers, Inc. Plaintiff then discharged Mrs. Hughes and started the present action.

Plaintiff-appellee advances three theories of why it maintains that defendant is responsible for its charges. The first of these alleges that Abstainers, Inc. was operated as a Division of defendant. by Price as its manager. Therefore claims plaintiff, Price was a general agent of defendant and entitled to subject defendant to liability for advertising expense Price incurred with plaintiff.

Plaintiff's next proposition is that Abstainers, Inc. and Mrs. Hughes were defendant's agents; that defendant by conduct led plaintiff to believe that Abstainers, Inc. and Mrs. Hughes had authority to incur advertising expense for it. In support of this plaintiff urges that defendant required Abstainers, Inc. to order $250,000. of advertising for defendant's policy. It repeats its charge that defendant operated Abstainers, Inc. as one of its divisions with Price in charge and that it made such representation to the public. Lastly it states defendant approved the advertising ordered by Abstainers, Inc. and Mrs. Hughes in a form which indicated that defendant was to pay for same.

Appellee's third theory is as stated in appellee's brief, "that plaintiff incurred the expense for which it is seeking payment at the instance of Margaret Hughes * * *." Plaintiff then goes on to contend that it did so on its belief that Mrs. Hughes had authority from the Beneficial Life Insurance Company through Abstainers, Inc. to incur that advertising expense on its behalf. Plaintiff concludes therefore that even if Mrs. Hughes was guilty of fraud in misstating that authority, it was defendant's fault and responsibility.

Appellant argues very strongly that there was no proper trial evidence pro-duced by plaintiff to make a jury question out of plaintiff's claim whatever its alleged base. Therefore appellant urges that it should be granted judgment n.o.v. Appellant's second point is that it is entitled to a new trial because (1) inadmissible, prejudicial evidence, irrelevant to plaintiff's claim was allowed at the trial and (2) the jury was without proper guidance on the fundamental agency question involved.

We take up the new trial problem first because we consider that there was clearly and unfortunately, substantial prejudicial evidence against the defendant erroneously introduced on behalf of the plaintiff.

█ The entire employment contract between Mrs. Hughes and Kemper was allowed in evidence over defense objection. Inter alia that contained the language:

"2. It is represented by Second Party (Hughes) and is a condition precedent of this contract that Second Party is the exclusive advertising agent for the National Abstainers Agency, Inc., the Abstainers Division of Beneficial Insurance Group * * *."

Kemper asserts the agreement was offered "to show the contractual relationship between Hughes and plaintiff (Kemper)." It went to the jury without limitation or explanation. Mrs. Hughes was never brought into court by plaintiff. Her representation above quoted was in a contract between Kemper and herself. Defendant never saw that paper, never had any knowledge that it included the above language, had nothing to do with it. However, if the jury believed it and interpreted the quoted clause as meaning Mrs. Hughes was defendant's exclusive advertising agent for its Abstainers policy, there was enough to have resulted in the verdict in favor of the plaintiff. This was serious error. The trial judge himself in his charge calling Mrs. Hughes "the real culprit here" said "She certainly made representations to Kemper when she well knew she was not the agent of the defendant

company. There is no question about that; she wasn't and she knew it. She had the contract." The above contract language as is seen does not give any intimation that Mrs. Hughes, knowing she was not defendant's advertising agent with regard to its Abstainers policy, made false representations to Kemper to that effect.

■ There are additionally thirty-seven exhibits of plaintiff which were in evidence over defendant's objection. Thirteen of these are definitely internal papers of plaintiff's business. They are self serving and inadmissible. Despite some statements in appellee's brief, there was no limitation to damage proof in connection with the admission of any of these into evidence. Appellee upholding the rightness of having these exhibits go to the jury states that the use of circumstantial evidence to prove agency is allowable and also that their admission constitutes harmless error. There is no problem here relating to valid circumstantial evidence as proof of agency. That is settled law. The particular exhibits however are as above noted, and whether authentic or not, confessedly plaintiff's own product which in no way lawfully support plaintiff's attempt to fasten responsibility for plaintiff's services on the defendant. We cannot agree that they constitute harmless error. There was a conscious effort to use them to project the defendant into the plaintiff's operation of its advertising of the defendant's policy. Their cumulative effect could have been prejudicial to the defense. Some of them also are of dates after Mrs. Hughes had been hired by Kemper.

■ Of the thirty-seven items above mentioned, twenty-eight are dated after Mrs. Hughes joined Kemper on September 16, 1963. Defendant contends that these are, on their faces, inadmissible because plaintiff's cause of action depends completely upon its proposition that at the time it employed Mrs. Hughes she was either the bonafide advertising agent of the Beneficial Insurance Company or by the acts and conduct of Beneficial she possessed such apparent authority. Alleged subsequent agency authority, real or apparent is of no help to plaintiff here. If the combination of Mrs. Hughes and/or her client, Abstainers Agency, did not so qualify when Mrs. Hughes entered into her contract with Kemper, evidence of something occurring on a later date to show that type of authority is irrelevant to the Kemper claim. Associated Indemnity Corporation v. King County School Dist. No. 181, 182 Wash. 414, 47 P.2d 10 (Wash. Supreme Ct. 1935); Mack Realty Co. v. Beckley Hardware & Supply Co., 107 W.Va. 290, 148 S.E. 122 (W. Va.Sup.Ct. of Appeals 1929); Dierks & Sons Lumber Co. v. Morris, 404 S.W. 2d 229 (Mo.App., Kansas City Ct.App. 1966). Plaintiff argues that the later documents are part of a continuous course of conduct by Beneficial. With the exception of P 19 we find no substance to that theory in connection with said exhibits.

Exhibit P 19 is a letter on the letterhead of "Beneficial Insurance Group" dated May 4, 1964 acknowledging receipt of an application and check for insurance signed "Joel M. Price Executive Managing Director National Abstainer's Program". This would fit in with the exhibits dated after the hiring of Mrs. Hughes except for the fact that there is also in evidence Exhibit 13, an undated form letter on the same letterhead also signed by "Joel M. Price Executive General Manager Abstainers Division." That letter reads in part "Enclosed you will find the application form and information you requested. Thank you for your interest—it pleases us very much." The balance of the letter tells of various policy advantages. E. J. Falls who was general manager of Beneficial Standard Life Insurance Company's Eastern Home Office in 1963 was a plaintiff's witness. He agreed that he knew that letters of this kind were going out from March 1963 through December 1963 signed "Joel M. Price, Executive General Manager, Abstainers Division." He de-

scribed the letter as "This is quite obviously a solicitation of National Abstainers Agency of someone on their mailing list whose address they procured in some way. * * * We did not even open mail of this kind, * * *." Price was a witness called by plaintiff. He was shown Exhibit 19, the letter of May 4, 1964 and asked if the signature was his, he answered, "That is a facsimile of my signature that I authorized." He said the letter was actually signed by his secretary. He was not asked whether he had ever been employed by Beneficial or anything else with reference to employment with said company. There was no other testimony whatever on behalf of plaintiff as to Price being employed by Beneficial. Appellant urges that the use of the "Executive General Manager Abstainers Division" was palpably part of the Hughes, Price effort to assist them in soliciting the sale of insurance policies. In our view, Exhibit 13, the undated form letter which Mr. Falls said went out from March 1963 through December 1963 was relevant and admissible. Fairly construed it can be said to reasonably include some time in March 1963 prior to the 20th thereof. Exhibit 19, the May 4, 1964 letter, though after March 20, 1963, has sufficient relationship to the form letter to make it relevant and admissible.

The first of plaintiff's trial theories charges actual general agent authority in Price to incur the advertising expense involved on behalf of defendant. There was definitely no evidence of actual authorization in Price by reason of which he could function as appellee's agent to incur the advertising responsibility on behalf of defendant.

Generally speaking a sales agent has no authority as such to subject his principal to liability for advertising costs. Eastern Advertising Co. v. Standard Nut Co., 264 Mass. 238, 162 N.E. 339 (Mass. 1928); United States Bedding Co. v. Andre, 105 Ark. 111, 150 S.W. 413, 41 L.R.A.,N.S., 1019 (Ark. 1912). This rule applies even more stringently to an insurance agent. As Couch on Insurance 2d Ed. §§ 26:339–340 puts it "An agent has authority to make incidental contracts or to do acts incidental to the performance of his duties as an agent. For example, the general agent of a foreign insurance company has implied authority to indorse checks made payable to the company for deposit or for transfer from one bank to another. * * * The agent of the insurer has no authority to bind the principal by contracts other than those related to insurance except to the extent set forth in the preceding section (above set out)."

Plaintiff's second proposition is that defendant's conduct led plaintiff to believe that Mrs. Hughes and National Abstainers Agency Inc. had authority to incur advertising expense on defendant's behalf. The legitimately admissible evidence in this regard as we see it is negligible except for Exhibits P 13 and P 19 which, as above mentioned, we hold relevant and admissible. We do not pass upon the weight of that evidence but we hold that defendant is not entitled to the entry of judgment n.o.v. on this record. Plaintiff's third contention is that if Mrs. Hughes was guilty of fraud in her alleged representations to plaintiff, she had apparent authority to incur the advertising expense in this matter for defendant through National Abstainers, Inc. This is in much the same situation as plaintiff's second point.

In the light of the substantial error in the admission of evidence, we are satisfied that this judgment should be reversed and defendant granted a new trial on the merits. Because of the disorderly trial presentation there was some understandable confusion with respect to the charge. At the new trial the pertinent agency principles and the full relationship of defendant to Abstainers, Inc. and Mrs. Hughes need to be clearly and carefully given the jury.

The judgment of the District Court will be reversed and the cause remanded to said Court for a new trial on the merits.

SUPPLEMENTAL OPINION.

PER CURIAM.

The only elements in this appeal which we considered needed rechecking by both sides were the thirty-three exhibits of plaintiff which were marked in evidence over defense objection. Both appellant and appellee still state that these are all dated after the Hughes hiring.

From our own examination in depth of these exhibits we find that in No. 17 there are twelve items, two of which are dated prior to the Hughes employment. Those two will therefore not be excluded from evidence because they are after the Hughes hiring. We do not pass upon their admissibility otherwise. The balance of the items are all after Hughes.

No. 41 consists of four items, two of which are dated prior to the Hughes employment. The latter two will not be excluded from evidence by the reason of being dated after the Hughes employment. We do not pass upon their admissibility otherwise. The other two items are undated and need further proof.

No. 42 is a single undated sheet. In the present state of the proofs this is not to be excluded from evidence as occurring after the Hughes hiring. We do not pass upon its admissibility otherwise.

No. 43 consists of seventeen sheets. Seven of these list names and have no date identification. These will not be excluded from evidence under the present proofs on the ground that they are of dates after the Hughes engagement. We do not pass upon their admissibility otherwise. The ten remaining items in this exhibit are copies of applications. Three of those are dated prior to Hughes. They will not be excluded under the present proofs as dated after Hughes. The other seven applications are all dated after Hughes. They will be excluded from evidence because of that fact.

No. 44 consists of three rejected applications, two of these are dated prior to Hughes. They are therefore not excluded as being of a later date. We do not pass upon their admissibility oth-erwise. The third item is dated after Hughes and will be excluded from evidence.

In line with the above, the language "thirty-three" in the first and second lines of the second full paragraph, page 756 of the said opinion is stricken and the language "twenty-eight" is inserted in place thereof. Other than the above changes made necessary by the inadvertence of counsel there are no changes in our original opinion filed October 25, 1968.