

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-2007

# Jurimex Kommerz v. Case Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3523

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Jurimex Kommerz v. Case Corp" (2007). *2007 Decisions.* Paper 687.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/687

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3523

JURIMEX KOMMERZ TRANSIT G.M.B.H.;
JURIMEX KOMMERZ TRANSIT AGRAR
CONSULTING PROJEKT KAS G.M.B.H.; ARGE IPC-JURIMEX,

Appellants

v.

CASE CORPORATION

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 00-cv-00083)
District Judge: Honorable Joseph J. Farnan, Jr.

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2007

Before: RENDELL and AMBRO, <u>Circuit Judges</u>,
SHAPIRO,<sup>*</sup> <u>District Judge</u>

(Opinion filed July 27, 2007)

OPINION

<sup>*</sup>Honorable Norma L. Shapiro, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

AMBRO, Circuit Judge

Plaintiffs below (Jurimex Kommerz Transit G.M.B.H.; Jurimex Kommerz Transit Agrar Consulting Projekt Kas, G.M.B.H; and Agre IPC-Jurimex (collectively "Jurimex")) challenge the District Court's grant of summary judgment in favor of Case Corporation ("Case") on the issue of whether Case can be held liable for the actions of its subsidiaries based on agency principles. We agree with the District Court that Jurimex failed to come forward with evidence sufficient to create a genuine issue of material fact, and therefore we affirm.

I.

As we write for the parties, only a brief recitation of the relevant background is necessary. This case involves alleged liability stemming from an international business transaction. Jurimex is an Austrian company that facilitates commodity and machinery deals between businesses in Eastern Europe and the former Soviet Union and their counterparts in Western Europe and the United States. It alleges that it entered into an agreement with representatives from Case's European subsidiaries to be part of the sale of combines from Case, a manufacturer of agricultural equipment, to Golden Grain, a buyer in Kazakhstan. Jurimex then alleges that it was cut out of the Golden Grain transaction and that Case should be held liable based on a variety of legal theories.

Jurimex brought suit against Case, the U.S. parent corporation, in the United States District Court for the District of Delaware. Upon a motion to dismiss by Case, the

District Court dismissed Jurimex's complaint because Case's European subsidiaries were indispensable parties but adding them would destroy diversity jurisdiction. The District Court also denied a motion by Jurimex for leave to amend its complaint to allege that Case was liable, independently from its subsidiaries, based on agency principles. Jurimex appealed; we affirmed the District Court's dismissal but reversed its denial of Jurimex's motion for leave to amend. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. Appx. 803 (3d Cir. 2003). We instructed the District Court to allow Jurimex to amend its complaint to allege that an agency relationship between Case and its subsidiaries gave rise to Case's liability. *Id.* at 808.

Jurimex amended its complaint and the parties conducted discovery. Following discovery, Case moved for summary judgment on a variety of grounds, including that Jurimex could not sustain its claims based on agency principles. Jurimex countered that there was evidence in the record supporting its agency theory of liability through either actual or apparent authority. The District Court, reaching only the agency issue, granted summary judgment to Case, concluding that Jurimex had failed to come forward with evidence to create a genuine issue of material fact. Jurimex once again appeals.[1]

II.

"We review the District Court's grant of summary judgment *de novo*." *Justofin v.*

---

[1]The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

3

*Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002)). Accordingly, we apply the same standard employed by the District Court. We will affirm its grant of summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is material when its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Justofin*, 372 F.3d at 521 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

While a parent corporation ordinarily is not liable for the acts of its subsidiary, "a parent may be held liable for the activities of its subsidiary" based on "an application of general agency principles." *Phoenix Can. Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988). Furthermore, "[n]ot only must an arrangement exist between the two corporations so that one acts on behalf of the other and within usual agency principles, but the arrangement must be relevant to the plaintiff's claim of wrongdoing." *Id.* In other words, the relevant inquiry for determining whether Case's European subsidiaries were

4

acting as its agents necessarily must focus on the "specific transaction" that gave rise to the alleged liability—in this case, the Golden Grain transaction. *Id.* at 1478 ("In conducting this review, the focus must be directed to the pertinent cause of action. . . . The evidence of relationship between the parents and subsidiaries as it bears on that breach of contract is the proper subject of our inquiry.").

A.

Jurimex alleges liability under both actual and apparent authority. "Actual authority is that authority which a principal expressly or implicitly grants to an agent." *Billops v. Magness Constr. Co.*, 391 A.2d 196, 197 (Del. 1978).[2] Actual authority "to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Restatement (Second) of Agency § 26 (1958); *see also* Restatement (Third) of Agency § 3.01 (2006). Regardless what form the authorization takes, an essential requirement for establishing actual authority is that it stem from a manifestation by the principal. *See* Restatement (Second) of Agency § 15; Restatement (Third) of Agency § 3.01 cmt. b.

After examining the evidence presented by Jurimex, the District Court concluded that Jurimex could point to no evidence by which Case authorized its European

---

[2]Both parties operate under the assumption that Delaware law governs the agency relationship. As in the prior appeal, "we will proceed on that assumption" as well. *Jurimex Kommerz Transit G.M.B.H*, 65 Fed. Appx. at 807 n.3.

5

subsidiaries to negotiate on its behalf in the Golden Grain transaction. *See* App. at 7–8. We agree.

Jurimex contends that Case's own Rule 30(b)(6) witness, Brian Cahill, testified that employees of Case's European subsidiaries were authorized to transact business on behalf of Case. Jurimex misconstrues Cahill's testimony. Although he testified that any of the employees of Case's subsidiaries "with sufficient authority under the delegation" could theoretically act on Case's behalf, App. at 209, he further testified that the employees of subsidiaries only received such authorization on a "one-off basis" "[f]or a particular transaction," App. at 216. Additionally, he testified that the only situation he knew in which such a delegation to a European subsidiary had taken place was in a transaction unrelated to the Golden Grain transaction. *See* App. at 209, 219. Because evidence of the agency relationship must be specific to the transaction from which the alleged liability arises, Cahill's testimony does nothing to show that Case authorized its European subsidiaries to act on its behalf in the Golden Grain transaction.

The other evidence to which Jurimex points in support of actual authority is also deficient. Vague second-hand statements allegedly from employees of the European subsidiaries about Case's general interest in the deal, *see, e.g.*, App. at 828, and oblique references to "Case Corporation" in correspondence from third parties, *see* App. at 623–30, even if admissible, are not evidence of actual authority. That type of evidence does not show a manifestation by Case, the principal, that its European subsidiaries were

6

authorized to negotiate on its behalf with Jurimex in the Golden Grain transaction. *See* Restatement (Second) of Agency § 15; Restatement (Third) of Agency § 3.01 cmt. b. Furthermore, evidence of Case's subsequent involvement in the Golden Grain transaction, in the limited role of a guarantor for a loan that helped finance the transaction and after Jurimex was no longer involved, *see, e.g.*, App. at 645, 740, in no way shows that Case had authorized its European subsidiaries to act on its behalf in the earlier negotiations with Jurimex. *See Don Kemper Co. v. Beneficial Standard Life Ins. Co.*, 404 F.2d 752, 756 (3d Cir. 1968) ("Alleged subsequent agency authority, real or apparent[,] is of no help to plaintiff here. . . . [E]vidence of something occurring on a later date to show that type of authority is irrelevant to [plaintiff's] claim.").

In sum, we agree with the District Court that, based on the evidence offered by Jurimex, "no jury could reasonably find that [Case's] subsidiaries had actual authority to act on [Case's] behalf." App. at 8.

### B.

Jurimex's claim of apparent authority fares no better. "[I]t is well settled that apparent authority (1) results from a manifestation by a person that another is his agent and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 989 (3d Cir.1995) (internal quotations omitted); *see also* Restatement (Second) of Agency § 27; Restatement (Third) of Agency § 3.03. As with actual authority, apparent

7

authority is only established through manifestations by the principal, and a third party's belief that the agent is authorized must be "traceable to the manifestation." Restatement (Third) of Agency § 3.03.

Jurimex's apparent authority argument focuses mainly on the fact that Case had been involved in earlier transactions with Jurimex entities for sales in Volgograd, Russia. There is some evidence that Case's European subsidiaries were acting on behalf of Case in transactions related to Volgograd, but these prior dealings do not give rise to the alleged liability that Jurimex is ascribing to Case in this lawsuit. "To bind a principal by its agent's acts, the plaintiff must demonstrate that the agent was acting on behalf of the principal *and that the cause of action arises out of that relationship*." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001) (emphasis added). As previously stated, the relevant inquiry for agency liability is whether the agency relationship existed with regard to the specific transaction or transactions that gave rise to the claim. Thus, whether Case had previously authorized its European subsidiaries to act on its behalf is not relevant to whether an agency relationship existed with regard to the Golden Grain transaction.

Jurimex insists that, based on the Volgograd transactions, it reasonably believed that Case was the principal in the Golden Grain transaction. Merely because an agent has been authorized to act on behalf of a principal in the past does not mean that the agent is later "cloaked with apparent authority." *Nat'l Mortgage Warehouse, LLC v. Bankers*

8

*First Mortgage Co.*, 190 F. Supp. 2d 774, 781 (D. Md. 2002). This is particularly true in this case, given the undisputed evidence that it was Case's practice to authorize its subsidiaries to act on its behalf only on a transaction-by-transaction basis. *See* App. at. 216; Restatement (Second) of Agency § 34(b) ("An authorization is interpreted in light of . . . the business methods of the principal."); *see also id*. § 37(2) ("The specific authorization of particular acts tends to show that a more general authority is not intended."). The Fourth Circuit's admonition in an earlier case is applicable to Jurimex here: "[T]he mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and, like a railroad crossing, suggests the duty to 'stop, look, and listen,' and he who would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority." *Standard Acc. Ins. Co. v. Simpson*, 64 F.2d 583, 589 (4th Cir. 1933).[3]

Jurimex also contends that Case somehow ratified authority granted to its European subsidiaries in the Volgograd transactions through its silence or inaction in the Golden Grain transaction and through the alleged retention of benefits from that transaction. Because Jurimex failed to raise this argument in the District Court, it is waived. Even if the argument were not waived, it would be unavailing. Indeed, the

---

[3]Furthermore, as discussed previously, any involvement of Case in the Golden Grain transaction after Jurimex was allegedly ousted from the deal cannot as a matter of law serve as a basis for Jurimex to believe that Case had authorized its European subsidiaries to act on its behalf when negotiating with Jurimex. *See Don Kemper Co.*, 404 F.2d at 756.

argument that Case was silent during the Golden Grain transaction is a telling admission that Jurimex can point to no manifestation by Case that it had authorized its subsidiaries to act on its behalf when dealing with Jurimex in that transaction. Moreover, Jurimex's argument regarding the retention of benefits fails because, even if Case ultimately received some benefit from the Golden Grain transaction (as parent corporations often do, even from their subsidiaries' independent dealings), this does not mean that the European subsidiaries were acting on Case's behalf when negotiating with Jurimex. The alleged retention of benefits is not a ratification here because it is not "conduct justifiable only on the assumption that [Case] consent[ed] to be bound" as principal in the negotiations with Jurimex. Restatement (Third) of Agency § 4.01 cmt. d.

In sum, Jurimex has not sustained its burden on summary judgment of coming forward with evidence to create a genuine issue of material fact with regard to apparent authority.[4]

### III.

Finally, we discern no abuse of discretion in the District Court's decision to deny discovery of matters unrelated to the Golden Grain transaction. As indicated above, Jurimex had to show that the European subsidiaries of Case had the authority to act on its behalf in the Golden Grain transaction negotiations with Jurimex. The District Court's

---

[4]As we agree with the District Court that summary judgment was appropriate on the agency issue, we need not reach the alternate bases for summary judgment argued by Case.

conclusion that documents unrelated to the Golden Grain transaction were irrelevant was no abuse of discretion.

We also reject Jurimex's argument that it was entitled to an adverse inference because of an alleged failure of Case to produce documents. Case represents that it has produced all documents in its possession and control concerning the Golden Grain transaction, and there is no evidence of destruction or withholding to warrant an adverse inference.

* * * *

For all of the above reasons, we affirm the judgment of the District Court.

11